**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

v.

ROBERT FRANKLIN DOYLE, JR.,

*Defendant-Appellant.*

No. 09-4603

Appeal from the United States District Court
for the Western District of Virginia, at Big Stone Gap.
James P. Jones, Chief District Judge.
(2:07-cr-00004-jpj-pms-1)

Argued: January 28, 2011

Decided: May 23, 2011

Before DUNCAN and WYNN, Circuit Judges, and
Irene C. BERGER, United States District Judge for the
Southern District of West Virginia,
sitting by designation.

Reversed by published opinion. Judge Wynn wrote the opinion, in which Judge Duncan and Judge Berger concurred. Judge Duncan wrote an opinion concurring separately and concurring in the judgment.

**COUNSEL**

**ARGUED:** John Edward Jessee, JESSEE, READ & ELY, PC, Abingdon, Virginia, for Appellant. Jennifer R. Bockhorst, OFFICE OF THE UNITED STATES ATTORNEY, Abingdon, Virginia, for Appellee. **ON BRIEF:** Timothy J. Heaphy, United States Attorney, Roanoke, Virginia, for Appellee.

---

**OPINION**

WYNN, Circuit Judge:

While "objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion [of evidence]," where the information relied upon is "'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable,'" exclusion is an appropriate remedy. *United States v. Leon*, 468 U.S. 897, 922-23 (1984) (quoting *Brown v. Illinois*, 422 U.S. 590, 610-11 (1975) (Powell, J., concurring in part)). In this case, the application for a warrant to search a private residence for evidence of child pornography failed to indicate that the pictures allegedly possessed by the resident were in fact pornographic and provided no indication as to when the pictures were allegedly possessed. Because it was unreasonable to believe that probable cause was demonstrated to search for evidence of the commission of a crime where the warrant application included scant indication that the crime had been committed and zero indication as to when it was committed, we conclude that exclusion of the evidence obtained from the search in this case is an appropriate remedy.

I.

On January 9, 2004, Captain Charles Taylor Scott ("Scott") of the Lee County, Virginia Sheriff's Department executed a

search warrant at the home of Defendant Robert Doyle, Jr. ("Doyle"). Doyle's computer was seized and a forensic examination of its hard drive revealed images of child pornography. On March 6, 2007, a federal grand jury indicted Doyle on separate counts of receipt[1] and possession[2] of child pornography. A superseding indictment, returned on September 11, 2007, repeated these two counts and added three counts of mailing[3] child pornography.

On August 9, 2007, Doyle filed a motion to suppress the fruits of the search of his home. In the motion, Doyle asserted that the search warrant was issued without probable cause. Specifically, Doyle argued that any information supporting a finding of probable cause was too "stale" to justify reliance thereon. On September 9, 2007, Doyle filed a supplement to the motion, arguing that "an insufficient factual basis as to the underlying alleged criminal conduct and reliability of the informant(s) was set forth within the Affidavit or otherwise represented to the state Magistrate to support a finding of probable cause."

---

[1]Federal law establishes criminal punishment for one who "knowingly receives or distributes . . . any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2252A(a)(2)(A).

[2]Federal law establishes criminal punishment for one who "knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer." 18 U.S.C. § 2252A(a)(5)(B).

[3]Federal law provides criminal punishment for one who "knowingly mails, or transports or ships using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, any child pornography." 18 U.S.C. § 2252A(a)(1).

Scott's warrant application requested a search for evidence of a violation of "18.2-347.1:1 Possession of Child Pornography."[4] Authorization was sought to search Doyle's house for "[a]ny and all materials, books, magazines, pictures, [or] videos that are of a sexual nature involving any minor child" as well as "any communication system that could be used to facilitate a sexual offense against a child. (computer)." In the section stating the "material facts constituting probable cause that the search should be made," the affidavit stated: "Three minor children have come forward and stated that [Doyle] has sexually assaulted them at the Doyle residence. One victims [sic] disclosed to an Uncle that Doyle had shown the victim pictures of nude children." The affidavit indicated that the affiant learned this information through an informant whose credibility was determined from "[d]etailed Victim statements of the assault and of the Doyle residence, where victims describe the assailants [sic] bedroom and vehicle he drives and description of the home. Which has all been verified by Sheriffs [sic] Dept."

On September 11, 2007, a federal magistrate held an evidentiary hearing on Doyle's motion to suppress. During the hearing, it was revealed that although Scott signed the application for the search warrant, as well as the supporting affidavit, both documents were drafted by Scott's subordinate, Lieutenant Frank Rouse ("Rouse").[5] Indeed, Scott did not even participate in the investigation. Rouse accompanied Scott to apply for the search warrant and gave an unsworn

---

[4]This statutory citation was incorrect, as the crime of Possession of Child Pornography is codified as Va. Code § 18.2-374.1:1. However, we perceive this minor discrepancy as nothing more than a typographical error, and none of Doyle's arguments hinge on this erroneous citation.

[5]According to both Scott and Rouse, Scott signed the application to alleviate concerns on the part of Doyle's family that Rouse was conducting the investigation as part of a personal vendetta against Doyle.

"summary" of his investigation to the issuing magistrate to supplement the affidavit.[6]

At the evidentiary hearing, Rouse testified that during the first week of August 2003, Edward J. Jones came to his office at the Sheriff's department. Jones reported that during a family gathering the preceding week, his step-nephew claimed to have been previously sodomized by Doyle. The child also reportedly claimed to have witnessed his younger brother being sodomized by Doyle. Jones additionally informed Rouse that the child claimed that Doyle showed him pictures of nude boys.

Rouse further testified that on August 26, 2003, he interviewed the allegedly sodomized siblings at the Sheriff's department. According to Rouse, Child 1[7] (the step-nephew who spoke to Jones at the family gathering) relayed three separate accounts of sexual assault. First, Child 1 claimed that Doyle picked him up from a Rose Hill pool hall and offered him money to help take out the trash. According to Child 1, when they reached Doyle's home, Doyle pulled him out of the truck, took him inside, and sodomized him. The second incident was similar: Doyle allegedly picked up Child 1 and Child 1's brother (Child 2) at the pool hall, took them to Doyle's house, and proceeded to sodomize Child 2. The third incident involved Doyle allegedly fondling Child 1 after picking him up at a trailer park in Rose Hill. Notably, Rouse admitted that during the interview, Child 1 never alleged that Doyle showed him child pornography.

---

[6]Because Rouse's "summary" was provided to the magistrate orally, and was not transcribed, we cannot discern exactly what information was offered in support of the application for a search warrant. For the purposes of this appeal, we rely on the details of the investigation as provided by Rouse at the hearing before the federal magistrate, noting Rouse's testimony that he made the same summary for the state magistrate who issued the warrant.

[7]To protect the minors involved in this case, their names will not be used. Instead, we will refer to each child by number.

Rouse also summarized his interview of Child 2, who described being picked up by Doyle, told that they were going to take out the trash, then taken to Doyle's house. Child 2 did not describe what transpired in the house, instead saying that his older brother (Child 1) knew what happened to him. Child 2 did, however, mention a "dragon" on Doyle's bed. Again, Rouse conceded that Child 2 did not allege that Doyle showed him child pornography.

According to Rouse, a fellow investigator in the Sheriff's department revealed that a third child claimed to have been sexually assaulted by Doyle. On December 12, 2003, Rouse interviewed the child (Child 3), who gave an account of sexual assault similar to those of the other two children. Rouse stated that Child 3 claimed that Doyle picked him up at the pool hall in Rose Hill, offered him money to take out the trash, then took him to the Doyle house and sodomized him. Child 3 also mentioned a separate incident in which Doyle fondled him. Additionally, Child 3 described the vehicles in the driveway at Doyle's house, how to get to Doyle's bedroom upon entering the house, and the contents of Doyle's bedroom. Because Rouse had previously been in Doyle's home, he was able to verify the accuracy of Child 3's descriptions. According to Rouse, Child 3's description of the interior of the home formed the primary motivation to apply for a search warrant, as it corroborated the allegations of sexual assault. As with the other children, Rouse conceded that Child 3 never made an allegation that he was shown child pornography by Doyle.

Scott also testified at the evidentiary hearing. However, because of memory loss resulting from a recent all-terrain vehicle accident, he was unable to elaborate on Rouse's account. On cross-examination, Scott admitted that he never heard anyone say anything about Doyle possessing child pornography. He also admitted that he had not interacted with any informant in this case, despite swearing to the contrary in the affidavit offered in support of the warrant application.

Scott was also unable to testify with certainty regarding his review of the affidavit, saying that it was "entirely possible" that he had not read it.

After hearing testimony from Scott and Rouse regarding the warrant application, the federal magistrate recommended granting Doyle's motion to suppress. The magistrate first concluded that there was insufficient evidence in the affidavit to support a finding of probable cause that child pornography would be found in the house. The magistrate noted that there was no evidence in the affidavit as to when the pictures were shown to Child 1, where they were shown to the child, or whether the pictures actually met the statutory definition of child pornography. Furthermore, the magistrate noted that there was no information in the affidavit to establish Jones's credibility. The magistrate also opined that the "good faith" exception to the warrant requirement did not apply in this case. The magistrate concluded that Scott's reliance on the warrant was unreasonable because the affidavit contained knowing or reckless falsity and was so "bare bones" in nature that the issuing magistrate essentially acted as a "rubber stamp."

Notwithstanding the magistrate's recommendation, on January 2, 2008, the district court entered an order denying Doyle's motion to suppress. The district court proceeded directly to the analysis of the applicability of the good faith exception to the warrant requirement.[8] Though the court recognized that the affidavit contained factual inaccuracies, it concluded that they were the product of negligence rather than intentional or reckless falsity. Further, the court opined that the state magistrate had not acted as a "rubber stamp" and that the affidavit was not "so lacking in indicia of probable

---

[8]"[R]eviewing courts have the discretion to consider the questions of the officers' good faith without deciding the Fourth Amendment issue." *United States v. Clutchette*, 24 F.3d 577, 581 n.4 (4th Cir. 1994) (citing *Leon*, 468 U.S. at 925).

cause as to render official belief in its existence entirely unreasonable." Accordingly, the district concluded that the good faith exception applied in this case. The matter proceeded to trial, and Doyle was convicted on all five counts. On June 23, 2009, Doyle was sentenced to 235 months' imprisonment. On appeal, Doyle contends that the district court erred when denying his motion to suppress.

## II.

When reviewing the district court's suppression determination, we review the legal conclusions de novo and the findings of fact for clear error. *United States v. Sterling*, 283 F.3d 216, 218 (4th Cir. 2002). We construe the evidence in the light most favorable to the Government, the prevailing party below. *United States v. Han*, 74 F.3d 537, 540 (4th Cir. 1996).

## A.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Ordinarily, when a search violates the Fourth Amendment, the fruits thereof are inadmissible under the exclusionary rule, "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect." *See United States v. Calandra*, 414 U.S. 338, 348 (1974); *see also Mapp v. Ohio*, 367 U.S. 643, 654-55 (1961) (holding that the Fourth Amendment, and particularly the exclusionary rule, is applicable to states through the Fourteenth Amendment). However, this deterrence objective "is not achieved through the suppression of evidence obtained by 'an officer acting with objective good faith' within the scope of a search warrant issued by a magistrate." *United*

*States v. Perez*, 393 F.3d 457, 461 (4th Cir. 2004) (quoting *Leon*, 468 U.S. at 920).

As such, in *Leon*, the Supreme Court established a good faith exception to the exclusionary rule under which "evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was 'objectively reasonable.'" *Id.* at 461 (quoting *Leon*, 468 U.S. at 922); *accord United States v. Bynum*, 293 F.3d 192, 195 (4th Cir. 2002) ("[A] court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonably well trained officer would have known that the search was illegal despite the magistrate's authorization.'") (quoting *Leon*, 468 U.S. at 922 n.23)).

Usually, "'a warrant issued by a magistrate . . . suffices to establish' that a law enforcement officer has 'acted in good faith in conducting the search.'" *Leon*, 468 U.S. at 922 (quoting *United States v. Ross*, 456 U.S. 798, 823 n.32 (1982)). Accordingly, searches executed "'pursuant to a warrant will rarely require any deep inquiry into reasonableness.'" *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 267 (1983) (White, J., concurring in the judgment)). However, there are four circumstances in which the *Leon* good faith exception will not apply:

> (1) "if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth;" (2) if "the issuing magistrate wholly abandoned his judicial role in the manner condemned in *Lo-Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979)"; (3) if the affidavit supporting the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable;" and (4) if under the circum-

stances of the case the warrant is "so facially deficient- *i.e.*, in failing to particularize the place to be searched or the things to be seized-that the executing officers cannot reasonably presume it to be valid."

*United States v. DeQuasie*, 373 F.3d 509, 519-20 (4th Cir. 2004) (quoting *Leon*, 468 U.S. at 923 (internal punctuation omitted)). Doyle's arguments on appeal focus exclusively on the first three circumstances.

### B.

Doyle first argues that the *Leon* good faith exception should not apply because "the affidavit executed by [Scott] is riddled with false and misleading information." Brief of Appellant at 19. We disagree.

Specifically, Doyle challenges the statement in Paragraph 4 of the affidavit that "[t]hree minor children have come forward and stated that [Doyle] has sexually assaulted them at the Doyle residence." This is an inaccurate assertion of the number of children that actually alleged sexual assault. Rouse admitted that during his investigation, only two children actually claimed that they were sexually assaulted. Child 2 merely stated that he was taken to Doyle's house and that Child 1, his older brother, knew what happened to him. Doyle also takes issue with the statement in the warrant application that "One victims [sic] disclosed to an Uncle that Doyle had shown the victim pictures of nude children." Doyle correctly points out that Jones was the step-uncle, not the Uncle, of Child 1.

The district court, citing *Rugendorf v. United States*, 376 U.S. 528, 531-32 (1964), opined that these factual inaccuracies "are only of peripheral relevancy to the showing of probable cause and do not go to the integrity of the Affidavit." In *Rugendorf*, the petitioner challenged the validity of a search warrant authorizing the search of his basement for stolen furs.

*Id.* at 532. The underlying affidavit indicated that the affiant learned from an informant that the furs were in the basement and that they were stolen. *Id.* The informant also provided a "detailed description of the furs, including number and type." *Id.* The affiant stated that he had checked police records and confirmed that a robbery of furs matching the description provided by the informant had occurred nearby. Notwithstanding these statements, the petitioner contended that the affidavit could not form the basis of probable cause to search because the informant inaccurately stated that petitioner was a manager of a local meat market and was in the "meat business." *Id.* The court opined that petitioner's occupation was "of only peripheral relevancy to the showing of probable cause," and, because the informant's minor inaccuracies were not "within the personal knowledge of the affiant, [they] did not go to the integrity of the affidavit." *Id.*

*Rugendorf* is distinguishable from this case insofar as the inaccuracies in the affidavit here involved information that was supposedly within the personal knowledge of the affiant (i.e. whether victims reported sexual assault). *See Franks v. Delaware*, 438 U.S. 154, 163-64 (1978) (finding *Rugendorf* inapplicable where accuracy of alleged misstatements was a matter within the personal knowledge of the affiant). However, false information will only void a warrant if the information was necessary to the finding of probable cause. *Id.* at 155-56; *see also United States v. Gary*, 528 F.3d 324, 328 (4th Cir. 2008) (concluding that where omissions from an affidavit "were not material to the finding of probable cause, the district court correctly held that the warrant was not invalid").

Here, neither the exact number of alleged sexual assault victims, nor the exact relationship between Jones and Child 1 were necessary to a finding of probable cause. To the extent, if any[9], that an allegation of sexual assault can support proba-

---

[9]*But see infra* Section II.D.

ble cause to search for evidence related to the distinct crime of possession of child pornography, a finding of probable cause would not be defeated where there were two, rather than three, victims making these allegations.[10] Likewise, whether Jones was Child 1's uncle or step-uncle is irrelevant to the veracity or import of his statement.[11] Accordingly, Doyle's reliance on these inaccuracies to defeat the good faith exception is misplaced.

Doyle also argues that inaccuracies in Paragraph 7 of the affidavit preclude the application of the good faith exception. Because Rouse actually conducted the interviews of the alleged victims, Doyle argues that the affidavit was misleading insofar as, by signing it, Scott swore that he "was advised of the facts set forth in this affidavit in whole or in part, by an informer."

The district court opined that the fact that Scott swore to the contents of the affidavit was unimportant because the issuing magistrate "was well aware that Rouse had conducted most of the investigation" and "also well aware of the circumstances which led to Scott signing off on the Affidavit." As mentioned above, to defeat the operation of the good faith exception requires not only intentional or reckless falsity, but also that the "the magistrate or judge in issuing a warrant was misled" by such falsity. *Leon*, 468 U.S. at 923. Rouse and Scott both testified that they explained to the state magistrate that Rouse conducted the interviews of the alleged victims, so

---

[10]It bears mention that insofar as Victim 1 alleged that Doyle sexually assaulted him *and* Victim 2, both assaults being within Victim 1's personal knowledge, there were in fact three allegations of sexual assault. The affidavit merely incorrectly identified the number of accusers.

[11]While Jones's concern for the safety of the children is an indication of his credibility, *see DeQuasie*, 373 F.3d at 523 (recognizing that informant's "obvious personal interest in [the victim's] well-being" supplied "a corresponding motive to be truthful"), Doyle has presented no evidence indicating that the concern for one's step-nephew is markedly different than that for a nephew.

Doyle cannot show that the magistrate was misled by the inaccuracy of Scott's statement.

Doyle also contests the veracity of the statement in Paragraph 7 of the affidavit that there were "[d]etailed Victim statements of the assault and of the Doyle residence, where victims describe the assailants [sic] bedroom and vehicle he drives and description of the home." Doyle notes that only Child 3 provided a description of the Doyle home. However, as the government notes, the alleged victims did *collectively* describe Doyle's bedroom, vehicle, and home. As such, the information provided, though perhaps misleading by virtue of sentence construction, was not technically false.

In sum, although Doyle identifies a number of factual inaccuracies in the affidavit offered in support of the warrant to search his home, where the statements are indeed inaccurate, he fails to establish that they were critical to the finding of probable cause and, as such, misled the magistrate into issuing the search warrant. Accordingly, we conclude that the first circumstance justifying a departure from the *Leon* good faith exception is not presented in this case.

### C.

Next, Doyle argues the good faith exception should not apply because the state magistrate "wholly abandoned his detached and neutral judicial role" by rubber-stamping a "bare bones" affidavit. Brief of Appellant at 22. We disagree.

The *Leon* court stated that when a magistrate abandons his neutral role "in the manner condemned in *Lo-Ji Sales, Inc. v. New York*," then the good faith exception should not apply. *Leon*, 468 U.S. at 923. In *Lo-Ji Sales*, an investigator for the New York State Police sought a warrant to search an adult bookstore and presented a Town Justice with two allegedly obscene films along with an affidavit indicating that "similar" films were present in the bookstore. 442 U.S. at 321. After

viewing the two films, the Town Justice issued a warrant authorizing a search of the bookstore for items determined to be possessed in violation of New York law. *Id.* at 321-22. The warrant did not list those items; instead, the Town Justice accompanied law enforcement officers on a search of the bookstore, examined the materials therein to assess their obscenity, then authorized the seizure of the items deemed obscene. *Id.* at 326-27. The Supreme Court stated that the Town Justice "was not acting as a judicial officer but as an adjunct law enforcement officer." *Id.* at 327. The Court disapproved of the Town Justice's reliance on the "conclusory" allegations that "similar" items were present at the store and criticized the issuance of an open-ended warrant. Following *Leon's* express reference to the unacceptability of the conduct of the Town Justice in *Lo-Ji Sales*, this Court has held that the good faith exception cannot apply "'where the issuing magistrate wholly abandoned his judicial role' as a detached and neutral decisionmaker." *United States v. Andrews*, 577 F.3d 231, 236 (4th Cir. 2009) (quoting *Leon*, 468 U.S. at 923).

Here, Doyle does not contend that the state magistrate issued an open-ended warrant or executed the search alongside law enforcement officers as did the Town Justice in *Lo-Ji Sales*. And while this Court has held that a magistrate abandons his judicial role when issuing a warrant based on a "bare bones affidavit,"[12] *United States v. Wilhelm*, 80 F.3d 116, 121-23 (4th Cir. 1996), if a magistrate issues a warrant on the basis of nonconclusory statements that nonetheless fail to establish probable cause, the reasonableness of the officer's execution of the warrant is better analyzed under the third circumstance discussed in *Leon*, which we address below. *See Andrews*, 577 F.3d at 240 (stating that a "rubber stamp" chal-

---

[12]*See United States v. Laury*, 985 F.2d 1293, 1311 n.23 (5th Cir. 1993) (defining "bare bones affidavit" as one that contains "wholly conclusory statements, which lack the facts and circumstances from which a magistrate can independently determine probable cause") (quoting *United States v. Satterwhite*, 980 F.2d 317, 321 (5th Cir. 1992)).

lenge to judicial neutrality "[e]ssentially . . . recasts Andrews' argument that no officer could reasonably rely on the warrant because there was an insufficient basis for a probable cause finding"); *see also United States v. Sager*, 743 F.2d 1261, 1267 (8th Cir. 1984) (rejecting rubber stamp challenge to neutrality as "only another way of phrasing the argument that no one who relied upon the affidavit could have been objectively reasonable"). Accordingly, we are reluctant to conclude that the state magistrate so abandoned his judicial role as to require a departure from the *Leon* good faith exception.

### D.

Doyle next contends that the *Leon* good faith exception should not apply because the affidavit offered in support of the warrant lacked the necessary information from which the issuing magistrate, or executing police officer, could glean probable cause to support a search for child pornography. We agree.

We recognize that mere insufficiency of the affidavit to support probable cause will not preclude the application of the *Leon* good faith exception. *See Andrews*, 577 F.3d at 236 n.1 ("In the *Leon* context, we begin with the assumption that there was not a substantial basis for finding probable cause; the only question is whether reliance on a warrant that lacks such a 'substantial basis' was nevertheless reasonable."). However, we conclude that the deficiencies in the affidavit, which were not remedied by Rouse's investigation summary, were so great as to render it objectively unreasonable for Scott to rely on the warrant.

The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The unsworn statements of Rouse would therefore not provide the necessary foundation for the issuance of the warrant itself.

However, the issue on appeal is not simply whether the warrant was deficient, but rather whether it was so deficient that relying on it was unreasonable, thus precluding operation of the good faith exception to the warrant requirement. When considering the application of the good faith exception, courts "should examine the totality of the information presented to the magistrate in deciding whether an officer's reliance on the warrant could have been reasonable." *United States v. Legg*, 18 F.3d 240, 244 n.1 (4th Cir. 1994). As such, "we are not limited to consideration of only the facts appearing on the face of the affidavit." *Perez*, 393 F.3d at 462; *see also United States v. Edwards*, 798 F.2d 686, 691 (4th Cir. 1986) (concluding that an officer's unrecorded oral presentation of critical information absent from the supporting affidavit did not preclude application of the *Leon* good faith exception).

Probable cause to search "exist[s] where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found" in a particular place. *Ornelas v. United States*, 517 U.S. 690, 696 (1996). The warrant application in this case sought permission to search for evidence of child pornography. Virginia law defines "child pornography" as "sexually explicit visual material which utilizes or has as a subject an identifiable minor." Va. Code Ann. § 18.2-374.1(A) (2010). "Sexually explicit visual material" is defined to include, *inter alia*, "a picture . . . which depicts sexual bestiality, a lewd exhibition of nudity, as nudity is defined in § 18.2-390, or sexual excitement, sexual conduct or sadomasochistic abuse, as also defined in § 18.2-390 . . . ." *Id.*

Doyle first contends that there was insufficient evidence presented to the issuing magistrate to establish the requisite nexus between Doyle's residence and any crime involving child pornography. "The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on

the property to which entry is sought." *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978). Accordingly, "residential searches have been upheld only where some information links the criminal activity to the defendant's residence." *United States v. Lalor*, 996 F.2d 1578, 1583 (4th Cir. 1993).

Here, Jones provided no indication as to where the pictures were allegedly shown to Child 1. However, "the nexus between the place to be searched and the items to be seized may be established by the nature of the item and the normal inferences of where one would likely keep such evidence." *United States v. Anderson*, 851 F.2d 727, 729 (4th Cir. 1988). The district court opined that "[t]he magistrate could reasonably infer from the nature of the items to be seized and the location of the alleged assaults that such items would be kept at Doyle's residence." This case is distinguishable from others in which this Court has found probable cause to search a suspect's residence for evidence of child pornography. *See, e.g.*, *United States v. Richardson*, 607 F.3d 357 (4th Cir. 2010) (finding probable cause where investigation linked defendant's email accounts, which he used to distribute child pornography, to the address where the warrant was executed); *United States v. Bynum*, 604 F.3d 161 (4th Cir. 2010) (finding probable cause where someone at address where warrant was executed uploaded suspected child pornography to the internet); *United States v. Goodwin,* 854 F.2d 33 (4th Cir. 1988) (finding probable cause for anticipatory search warrant when defendant ordered child pornography and investigation verified that materials would be delivered to address where warrant was executed). Yet, in light of *Anderson*, we cannot conclude that the district court erred in concluding that, if Doyle actually possessed child pornography, it was reasonable to assume that Doyle kept it at his house.

There is, however, remarkably scant evidence in the affidavit (or Rouse's investigation summary) to support a belief that Doyle in fact possessed child pornography. The bulk of the information supplied in the affidavit concerned allegations of

sexual assault. But evidence of child molestation alone does not support probable cause to search for child pornography. *See United States v. Hodson*, 543 F.3d 286, 292 (6th Cir. 2008) ("[I]t is beyond dispute that the warrant was defective for lack of probable cause-Detective Pickrell established probable cause for one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography). Consequently, the warrant did not authorize the search and, barring some other consideration, the evidence obtained during that search must be excluded from trial."); *see also United States v. Falso*, 544 F.3d 110, 124 (2d Cir. 2008) ("[A]lthough Falso's crime allegedly involved the sexual abuse of a minor, it did not relate to child pornography. That the law criminalizes both child pornography and the sexual abuse (or endangerment) of children cannot be enough.") (citation omitted).

Here, the only mention in the warrant application regarding the presence of pornography was the statement that one of the alleged victims "disclosed to an Uncle that Doyle had shown the victim pictures of nude children." Doyle argues that the warrant lacked sufficient indicia of the credibility of Jones, the only informant who mentioned the presence of nude photographs. "In order to establish probable cause for the issuance of a search warrant, it is necessary to show that 'given all the circumstances set forth in the affidavit[,] . . . including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Legg*, 18 F.3d at 243 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).

Doyle correctly notes that the affidavit only addressed the reliability and credibility of the child accusers. The district court nonetheless opined that the step-uncle's "information regarding photographs of nude children could be deemed reliable by the officer's corroboration of the step uncle's depiction of the alleged assaults." However, Jones did not describe

the assaults (the children did), so corroboration of the details of the assault would not shed light on his credibility. Nonetheless, we find unpersuasive Doyle's argument that there were insufficient indicia of Jones's credibility. The Supreme Court has stated that "if an unquestionably honest citizen comes forward with a report of criminal activity-which if fabricated would subject him to criminal liability- . . . rigorous scrutiny of the basis of his knowledge [is] unnecessary." *Gates*, 462 U.S. at 233-34; *see also Easton v. City of Boulder*, 776 F.2d 1441, 1449 (10th Cir. 1985) ("[W]hen examining informant evidence used to support a claim of probable cause for a warrant . . . the skepticism and careful scrutiny usually found in cases involving informants, sometimes anonymous, from the criminal milieu, is appropriately relaxed if the informant is an identified victim or ordinary citizen witness."). Moreover, Jones's concern for the safety of the children is an additional indication of his credibility. *See DeQuasie*, 373 F.3d at 523.

However, the credibility of Jones, who merely reported the allegations of a child informant, does little, if anything, to indicate probable cause to search Doyle's home. Even if the step-uncle's credibility were entirely unassailable, this would merely establish that he was telling the truth that his step-nephew made the allegations that Jones reported to Rouse. That, in itself, says nothing about the truth of those allegations. Importantly, Rouse testified that none of the alleged child victims made allegations to law enforcement that they were shown pornographic material. Indeed, there is no indication in the record that the children were even *asked* during the interview process about the presence of child pornography.

Doyle also argues that there was no evidence that the pictures referenced by Jones actually constituted child pornography. The mere presence of nudity in a photograph, even child nudity, does not constitute child pornography as that term is defined by Virginia law. *See* Va. Code Ann. § 18.2-374.1(A) (2004). Instead, the picture must contain a "lewd exhibition" of nudity. *Id.*; *see also Frantz v. Commonwealth*, 9 Va. App.

348, 353-54, 388 S.E.2d 273, 276 (Va. Ct. App. 1990) (holding that photographs of nude teenage boys "just standing there" or "walking around" was not sufficient to establish that the pictures constituted a lewd exhibition of nudity); *Foster v. Commonwealth*, 6 Va. App. 313, 329, 369 S.E.2d 688, 698 (Va. Ct. App. 1988) (holding that pictures of young female's exposed nipples, without more, did not constitute a lewd exhibition of nudity). Even assuming Jones's veracity and the accuracy of his step-nephew's allegation, nothing in the affidavit supports a belief that the alleged pictures showed a "lewd exhibition of nudity" in violation of the Virginia statute. The affidavit therefore lacked probable cause to justify a search of Doyle's home for child pornography. It is important to remember that the absence of probable cause is insufficient to defeat the operation of the *Leon* good faith exception; the evidence offered in the warrant application must be so deficient as to preclude reasonable belief in the existence of probable cause. *See Andrews*, 577 F.3d at 236 n.1.

One might argue that the legal distinction between mere nudity and child pornography is not something that a reasonable law enforcement officer in Virginia should have known. However, "[p]olice officers generally have a duty to know the basic elements of the laws they enforce." *Kelly v. Borough of Carlisle*, 622 F.3d 248, 258 (3d Cir. 2010). Without anything more than a description of the photographs as depicting "nude children,"[13] there were arguably insufficient indicia of probable cause to justify reasonable reliance on a warrant authorizing a search for child pornography. Insofar as possessing nude pictures of children is not per se illegal, reasonable officers should at least obtain a description of the photographs before relying on them to justify entry into a residence.[14]

---

[13]Nothing in the investigation "summary" that Rouse provided to the state magistrate elaborated on the description of the pictures.

[14]We are mindful that Child 1's statement regarding Doyle's possession of the pictures was not made in isolation. Instead, it accompanied Child 1's allegation that Doyle sodomized him. However, we are reminded that

Moreover, even assuming *arguendo* that a reasonable officer could believe that the pictures possessed by Doyle contained child pornography, it was unreasonable to believe that probable cause was demonstrated to search Doyle's home given the complete absence of any indication as to when the pictures were possessed. In other words, even if the minimal facts recited in the affidavit could justify reasonable reliance on the part of the officers, there is absolutely no indication in the affidavit as to when probable cause to search arose. "A valid search warrant may issue only upon allegations of facts so closely related to the time of the issue of the warrant as to justify a finding of probable cause *at that time*." *See United States v. McCall*, 740 F.2d 1331, 1335-36 (4th Cir. 1984) (emphasis added) (internal quotation marks omitted); *id.* at 1336 ("[E]vidence seized pursuant to a warrant supported by 'stale' probable cause is not admissible in a criminal trial to establish the defendant's guilt."). Doyle notes that the affidavit did not include any mention of when the assaults allegedly occurred or when the pictures were shown to Child 1. Moreover, according to Rouse, he did not inform the magistrate of the timing of the alleged offenses, instead only relaying the dates of his interviews of the alleged victims.

Doyle concedes that "[t]here are a host of cases that discount the nexus of time requirement when considering allegations of child pornography." Brief of Appellant at 16. "In the context of child pornography cases, courts have largely concluded that a delay-even a substantial delay-between distribution and the issuance of a search warrant does not render the underlying information stale." *United States v. Richardson*,

---

the crime of child molestation is distinct from the crime of possessing child pornography. *See Hodson*, 543 F.3d at 292. We are reluctant to endorse an inference regarding the subject matter of a photograph drawn solely from the context in which the photograph is displayed. Moreover, we cannot conclude that it was reasonable to rely on such an inference when simply asking Child 1 about the content of the photograph would have precluded the need to do so.

607 F.3d at 370 (concluding that lapse of four months did not render probable cause to search for child pornography "stale"); *see, e.g. United States v. Newsom*, 402 F.3d 780, 783 (7th Cir. 2005) ("Information a year old is not necessarily stale as a matter of law, especially where child pornography is concerned."); *United States v. Harvey*, 2 F.3d 1318, 1323 (3d Cir. 1993) (concluding that two to fifteen months does not render information stale).[15]

---

[15]As stated in *Richardson*:

> This consensus rests on the widespread view among the courts-in accord with Agent White's affidavit-that "collectors and distributors of child pornography value their sexually explicit materials highly, 'rarely if ever' dispose of such material, and store it 'for long periods' in a secure place, typically in their homes." *United States v. Lacy*, 119 F.3d 742, 746 (9th Cir. 1997); *see United States v. Watzman*, 486 F.3d 1004, 1008 (7th Cir. 2007) (rejecting challenge to probable cause where three months elapsed between the crime and issuance of the warrant where agent testified child pornographers retain their collected materials for long periods of time); *United States v. Gourde*, 440 F.3d 1065, 1072 (9th Cir. 2006) (en banc) (concluding that "[t]he details provided on the use of computers by child pornographers and the collector profile" provided support for a finding of probable cause); *United States v. Riccardi*, 405 F.3d 852, 861 (10th Cir. 2005) (finding probable cause based, in part, on "the observation that possessors often keep electronic copies of child pornography"); *United States v. Lemon*, 590 F.3d 612, 615 (8th Cir. 2010) ("Many courts, including our own, have given substantial weight to testimony from qualified law enforcement agents about the extent to which pedophiles retain child pornography."), cert. denied, No. 90-10170, ___ U.S. ___, 130 S.Ct. 3305, ___ L.Ed.2d ___, 2010 WL 1531424 (2010); *United States v. Morales-Aldahondo*, 524 F.3d 115, 119 (1st Cir. 2008) (holding that three-year delay between acquisition of child pornography and application for warrant did not render supporting information stale since "customers of child pornography sites do not quickly dispose of their cache"), cert. denied, ___ U.S. ___, 129 S.Ct. 512, 172 L.Ed.2d 376 (2008).

607 F.3d at 370.

However, Doyle argues that "the record in this case is absolutely void of any information as to when . . . Doyle is alleged to have shown the victim pictures of nude children." Thus, the argument is not that *too much* time elapsed, but instead that there was insufficient evidence presented to the magistrate to determine *how much* time elapsed.[16] While in the context of child pornography substantial amounts of time can elapse before probable cause to search for child pornography becomes "stale," there is no support for the contention that once probable cause exists to search for child pornography, it remains valid *ad infinitum*.[17] As such, we conclude that even if the affidavit established probable cause, it was completely devoid of indicia that the probable cause was not stale.

Further, where the totality of the information provided to the magistrate included no indication as to when the events supposedly creating probable cause to search took place,[18] we

---

[16]Indeed, Rouse admitted that "no time frame whatsoever" was given to the magistrate regarding when the pictures were allegedly shown to Victim 1. Rouse also conceded that "the magistrate was given no information regarding the alleged timing of the assaults." [J.A. 115] We note that Rouse did respond to one of the magistrate's questions by indicating that child molestors tend to "collect trophies and keep pictures." However, this observation, without any indication as to when the alleged molestation occurred, cannot support probable cause to search for child pornography.

[17]Logically, the assaults could not have occurred prior to the birth of the victims, but there is no indication of the age of the children in the affidavit. Nor did Rouse indicate that he informed the magistrate of the age of the children, notwithstanding that Rouse knew that information.

[18]The fact that the date of the initial event related to probable cause to search for child pornography was completely omitted from the information provided to the magistrate distinguishes this case from *Anzualda v. Commonwealth*, 44 Va. App. 764, 607 S.E.2d 749 (Va. Ct. App. 2005). In *Anzualda*, the affidavit included the date of a murder committed with a pistol. The affidavit further stated that an informant disclosed that Anzualda had traded marijuana for a pistol. The court concluded that probable cause to search Anzualda's home was lacking, but that the *Leon* good faith exception applied because officers could reasonably assume that probable cause to search was, at a minimum, existent as of the date of the murder

cannot conclude that the officers reasonably relied on the resulting search warrant. *See United States v. Zayas-Diaz*, 95 F.3d 105, 114-15 (1st Cir. 1996) ("[A] reasonably well-trained law enforcement officer should be familiar with the fundamental legal principle that both the 'commission' and 'nexus' elements of 'probable cause' include an essential temporal component." (citing *Leon*, 468 U.S. at 920 n.20)); *see also United States v. Huggins*, 733 F. Supp. 445, 449 (D.D.C. 1990) (refusing to apply good faith exception where the court could not infer, from the information within "the four corners of the affidavit . . . the time during which the criminal activity was observed").

Here, nothing indicated when or if child pornography allegedly existed in Doyle's home. We conclude that the objectively reasonable officer would not rely on a warrant application so devoid of necessary information. Moreover, because reliance on the warrant was not objectively reasonable, we find that the good faith exception recognized in *Leon* is inapplicable.

## III.

In sum, nothing in this opinion should be construed as requiring officers to second-guess the legal conclusions drawn by magistrates presented with sufficient evidence to reach them. However, where a reasonable officer would know that a probable cause determination could not be rendered without information conspicuously absent from his application for a warrant, reliance on the resulting warrant is not objectively

---

6 months prior to the execution of the warrant. *Id.* at 782-83, 607 S.E.2d at 758. As such, the court opined that the omission of other critical dates did not preclude the application of the good faith exception. Here, in contrast, the *only* critical date was the date when Doyle allegedly showed Victim 1 a nude photograph. As that date was omitted, there was nothing on which a reasonable officer could rely to conclude that a sufficiently limited period of time had elapsed to justify the search.

reasonable. Stated differently, a magistrate's signature cannot render reasonable an objectively unreasonable failure to support a warrant application with evidence necessary to demonstrate probable cause. Here, the information before the magistrate failed to demonstrate whether the pictures allegedly possessed by Doyle were in fact illegal to possess and failed to indicate when Doyle allegedly possessed them. Upholding this warrant would ratify police reliance on questionable indicia of probable cause to justify a search of a residence for child pornography without any regard to when the child pornography supposedly existed in the residence. Because such reliance would be manifestly unreasonable, we cannot endorse such action. Accordingly, the holding of the district court is

*REVERSED*.

DUNCAN, Circuit Judge, concurring separately and concurring in the judgment:

   This is a particularly troubling set of circumstances and I commend the majority for its thorough parsing of the facts. I am in ultimate agreement with its conclusion and write separately only to explain my somewhat different analytical approach.

   The majority carefully considers each prong of the good faith analysis raised by Doyle but ultimately relies on the staleness of the evidence to preclude application of the *Leon* exception. Staleness is indeed an issue here, though I remain unconvinced that it is, standing alone, dispositive. For my part, rather, it is the totality of irregularities and questionable actions—Lieutenant Rouse's unsworn testimony in support of the warrant, the fact that the affiant to the search warrant did not participate in the investigation, and the paucity of evidence regarding child pornography—that ultimately tips the scales in favor of reversal and provides guidance for law enforcement and the district courts going forward. *Cf. U.S. v.*

*DeQuasie*, 373 F.3d 509, 520 (4th Cir. 2004) (considering "all of the circumstances of the case" when evaluating the applicability of the *Leon* exception (quoting *Leon*, 468 U.S. at 922 n.23)).