**NOT RECOMMENDED FOR PUBLICATION**
File Name: 19a0259n.06

**No. 17-2422**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 20, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| JONATHON WILLIAM-DURAND NEUHARD, | ) | DISTRICT OF MICHIGAN |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:      BOGGS, KETHLEDGE, and STRANCH, Circuit Judges.

**BOGGS, Circuit Judge.** Two of Jonathon Neuhard's nieces told their mother, and eventually the police, that he had sexually assaulted them. Officers obtained a warrant to search his electronic devices. They discovered child pornography, including photos he had taken and videos he had downloaded. A jury convicted Neuhard of producing, receiving, and possessing child pornography. On appeal, he contests the district court's denial of his motion to suppress the photos and videos found on his electronic devices. He also challenges several aspects of his trial and sentence. Finding all of these arguments unpersuasive, we affirm Neuhard's conviction and sentence.

## I.  Background

The investigation into Neuhard began when his nieces, whom we will call MV1 (then nine years old) and MV2 (then seven), told their mother that Neuhard had sexually assaulted them. Their mother informed the police.

According to MV1, Neuhard molested her at least three times. One time, he showed her a pornographic video, told her, "this is what you have to do to me," and molested her. Another time, Neuhard took pictures of her genitals and bare chest with his cell phone. MV1 was seven or eight years old at the time of these assaults. Her sister, MV2, reported one assault, which happened when she was six.

Based on the girls' and their mother's statements, the local police obtained a search warrant from an Oakland County, Michigan judge. They found a tablet with a memory card, which contained four photos of Neuhard performing sexual acts on MV1. On Neuhard's laptop, they found two child-pornography videos downloaded from the internet.

A grand jury indicted Neuhard on three counts: producing child pornography (the photos of MV1) and receiving and possessing child pornography (the videos from the internet). *See* 18 U.S.C. §§ 2251(a), 2252A(a)(2), 2252A(a)(5)(B). He moved to suppress the videos and photos, arguing that the police lacked probable cause to search his electronic devices and that the warrant violated the Fourth Amendment's particularity requirement. The district court denied his motion.

Neuhard went to trial, and the jury convicted him on all three counts. The district court sentenced him to 35 years in prison and later ordered him to pay $40,356 in restitution. Neuhard timely appealed his conviction and prison sentence, but he did not file an additional notice of appeal from the subsequent restitution order.

## II. Motion to Suppress

We begin with the search of Neuhard's electronic devices. The Fourth Amendment requires that search warrants be based "upon probable cause . . . and particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Neuhard argues that the warrant here violated both requirements: The police lacked probable cause to search for child

pornography and the warrant was overbroad. We disagree on both grounds, and so we affirm the district court's denial of Neuhard's motion to suppress.

"When reviewing the denial of a motion to suppress, we review the district court's findings of fact for clear error and its conclusions of law de novo, considering the evidence in the light most favorable to the government." *United States v. Richards*, 659 F.3d 527, 536 (6th Cir. 2011).

### A. Probable Cause

Neuhard first argues that the affidavit supporting the search warrant did not establish probable cause to search for child pornography. "Considering the totality of the circumstances," *District of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018), his argument is meritless.

Probable cause exists if the facts, circumstances, and "reasonably trustworthy information" would allow a person "of reasonable caution" to believe that a crime has been committed. *Brinegar v. United States*, 338 U.S. 160, 175 (1949). This is "a practical, nontechnical conception," *ibid.*, and it "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Illinois v. Gates*, 462 U.S. 213, 243–44 n.13 (1983). We give "great deference" to the issuing magistrate's probable-cause determination. *Id.* at 236.

Detective Mark Zupic submitted an affidavit in support of the warrant application. In it, Zupic explained that he had observed forensic interviews of MV1 and MV2. Both girls accused Neuhard of sexually assaulting them. MV1 stated that Neuhard "got on his computer and typed 'sex video,'" and showed her a video "of a girl sucking a boy's part . . . neither actors were wearing any clothes and then the boy shoved his part into the girl." R. 34–1 at 119. Neuhard "told her 'this is what you have to do to me'" and then molested her. *Ibid.* She also stated that "when she was 7 or 8 years old, on Christmas," Neuhard took pictures of her genitals with his cell phone. *Ibid.*

Neuhard contends that this affidavit failed to establish probable cause to search his electronic devices for child pornography. He is right that standing alone, evidence of child molestation does not establish probable cause to search for child pornography. *United States v. Hodson*, 543 F.3d 286, 292 (6th Cir. 2008). But *Hodson* does not help him. In that case, the affidavit contained evidence of molestation but "no information whatsoever" about child pornography. *Id.* at 289. Here, the affidavit stated that Neuhard both showed MV1 child pornography stored on his computer and produced child pornography using his cell phone.

Neuhard also cites *United States v. Doyle*, 650 F.3d 460 (4th Cir. 2011). *Doyle* is even easier to distinguish. The affidavit in *Doyle* claimed that the defendant had shown someone "pictures of nude children." *Id.* at 464. But during the pre-warrant investigation, "none of the alleged child victims made allegations to law enforcement that they were shown pornographic material. Indeed, there is no indication in the record that the children were even *asked* during the interview process about the presence of child pornography." *Id.* at 473. Neuhard does not argue that Detective Zupic's affidavit misrepresented MV1's statements.

Neuhard's final argument is that when MV1 described the video he showed her, she may have used the words "boy" and "girl" to refer to adults. "But probable cause does not require . . . rul[ing] out a suspect's innocent explanation for suspicious facts." *Wesby*, 138 S. Ct. at 588. The question is whether, "considering all of the surrounding circumstances, including the plausibility of the explanation itself . . . there was a substantial chance of criminal activity." *Ibid.* (cleaned up). Zupic's affidavit easily clears this bar.

## B. Particularity

Next, Neuhard argues that the search warrant violated the Fourth Amendment's particularity requirement. We disagree.

"The particularity requirement encompasses two separate concerns—whether the warrant supplies adequate information to guide officers in selecting what items to seize, and whether the category of items specified in the warrant is too broad because it includes articles that should not be seized." *United States v. Evers*, 669 F.3d 645, 651–52 (6th Cir. 2012). Neuhard's arguments relate to the second concern. The warrant allowed the police to seize from Neuhard's house:

> Any and all records or evidence of the crime of child sexual assault/abuse, including but not limited to . . . cell phones, smart phones, tablets, or any other handheld/portable electronic devices, computers . . . video game consoles . . . photographs related to child pornography or the victims . . . external hard drives . . . digital cameras . . . any and all information and/or data stored . . . on computer media or media capable of being read by a computer including, but not limited to, floppy diskettes, fixed hard disk drives, flash drives, CD's or DVD's, secure digital (SD) cards, removable hard disk cartridges, and any other device designed to store computer data, with the intent of all the aforementioned electronics and electronic storage devices that are seized will be analyzed by a forensic examiner.

R. 34–1 at 115. According to Neuhard, the warrant was overbroad.

First, Neuhard argues that the warrant should only have allowed the police to search his cell phone and computer, the devices MV1 mentioned in her forensic interview. But a search warrant is "valid if it is as specific as the circumstances and the nature of the activity under investigation permit." *Guest v. Leis*, 255 F.3d 325, 336 (6th Cir. 2001) (cleaned up). This warrant was as specific as the circumstances permitted. The police knew that Neuhard used his computer and cell phone to view videos and take pictures, but they did not know where he *stored* his child-pornography files. *See Evers*, 669 F.3d at 653.

Next, Neuhard contends that the warrant should have included a date restriction. Presumably, he means that it should have allowed the police only to search for files created around

the time of MV1's allegations. But even if the warrant should have included a date restriction, suppression is not the right remedy. When a warrant is overbroad, we "sever the infirm portion . . . from the remainder which passes constitutional muster." *United States v. Blakeney*, 942 F.2d 1001, 1027 (6th Cir. 1991). Neuhard makes no argument that the files the police found fail to match the time period MV1 described.

Finally, Neuhard complains that the warrant did not include a search protocol. But our precedent does not require search protocols in all cases. *Richards*, 659 F.3d at 538–39. Instead, we undertake "a reasonableness analysis on a case-by-case basis." *Id.* at 539. "In general, so long as the computer search is limited to a search for evidence explicitly authorized in the warrant, it is reasonable for the executing officers to open the various types of files" stored on the seized devices "in order to determine whether they contain such evidence." *Id.* at 540 (cleaned up). Neuhard has given us no reason to think this general rule leads to unreasonable results in his case.

For these reasons, the search of Neuhard's electronic devices was reasonable. The warrant complied with the Fourth Amendment's particularity and probable-cause requirements, and the district court rightly denied Neuhard's motion to suppress.

### III. Trial

Neuhard also claims that three errors require a retrial. First, he argues, the district court erred when it refused to admit evidence that he offered to take a polygraph test. Second, he claims that the prosecutor's closing argument improperly included facts not in evidence and personal opinions with no basis in the record. Finally, he makes a cumulative-error claim. All three arguments are meritless.

A. Polygraph Testimony

After the police searched Neuhard's house and seized his electronics, he agreed to an uncounseled interview with a detective. During this interview, he offered to submit to a polygraph examination. At trial, Neuhard tried to introduce evidence of this offer, but the district court refused to admit it. The district court did not abuse its discretion.

While polygraph results are usually inadmissible, "in limited circumstances, evidence of a party's willingness to submit to a polygraph may, within the discretion of the trial court, become admissible . . . . The trial court must first determine whether the proffered evidence is relevant. If the court finds that the evidence is relevant, it must then balance the probative value of the evidence against the hazard of unfair prejudice and jury confusion. We review the court's conclusion on this matter for an abuse of discretion." *United States v. Harris*, 9 F.3d 493, 501–02 (6th Cir. 1993) (cleaned up).

The polygraph-evidence dispute began with testimony from a government witness. Case agent Lisa Keith interviewed three other men who had lived in the house where the pornographic photos of MV1 were taken. Neuhard's theory was that one of these other men was responsible for the images. On direct examination, the government asked Keith to describe "[t]he attitude, the demeanor, how they presented" during the interviews. R. 126 at 981. Keith responded that the three men "offered to take lie detector tests[.]" *Ibid.* Defense counsel objected, and the government conceded that this testimony was inadmissible. The district court instructed the jury that "the reference . . . about other people offering to go take a polygraph is something that should not have come in and so I'm going to order that that be stricken, and so it's something you cannot consider when you discuss the case and deliberate on the case." *Id.* at 984–85. Later, defense counsel asked

for permission to call the detective who interviewed Neuhard "just to ask him . . . if my client offered to take a polygraph." *Id.* at 1022. The district court denied this request.

The district court did not abuse its discretion. The evidence that Neuhard offered to take a polygraph "was marginally relevant at best," *Harris*, 9 F.3d at 502, and it was misleading, because he later withdrew his offer. Moreover, "[t]he waste of time that would result from the inquiry into this collateral issue, both on cross-examination and on redirect, is a sufficient reason to exclude the evidence." *United States v. Stephens*, 148 F. App'x 385, 389 (6th Cir. 2005). Neuhard argues that the evidence should have been admitted "to balance the evidentiary equation" after Keith's testimony, Reply Br. at 9, but the district court was within its discretion to remedy that error by issuing a limiting instruction, which we presume the jury followed. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000).

## B. Closing Argument

The prosecutor's closing argument included remarks about "how those with a sexual interest in children groom, condition, and prey on their victims." R. 127 at 1098. The prosecutor argued that "[w]hen a person has a sexual interest in children, like the defendant here, and he has the access and opportunity to sexually exploit those children, like the defendant here, that person . . . will groom their victims into believing that sex between children and adults is okay. And will show them pornographic videos to normalize this, but also to instruct the child how to perform the sex acts that they will then be forced to do." *Id.* at 1098–99. Neuhard argues that these remarks were improper because there was no expert testimony about grooming. In his view, the prosecutor argued facts not in evidence and expressed a personal opinion with no support in the record. Even assuming the prosecutor's remarks were improper, they were not flagrant, and so they do not require a new trial.

"Whether the government's closing argument constitutes prosecutorial misconduct presents a mixed question of law and fact that we review de novo*." United States v. Emuegbunam*, 268 F.3d 377, 403–04 (6th Cir. 2001). A prosecutor's improper argument warrants a new trial if it "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). "We employ a two-step process in reviewing claims of prosecutorial misconduct. First, we determine whether the prosecutor's comments were improper. Second, if the comments were improper, we consider whether they were so flagrant as to warrant reversal." *United States v. Lawrence*, 735 F.3d 385, 431 (6th Cir. 2013).

Even if the prosecutor's comments here were improper,[1] they were not so flagrant as to warrant reversal. Flagrancy "is a pretty high standard." *United States v. Francis*, 170 F.3d 546, 552 (6th Cir. 1999). Neuhard cannot meet it. For one thing, it is hard to see how the prosecutor's comments "tended to mislead the jury or prejudice the defendant[.]" *United States v. Carter*, 236 F.3d 777, 783 (6th Cir. 2001). Grooming was not at issue in this case. It was not an element of any of the three offenses Neuhard was charged with, and it was irrelevant to his defense theory (which blamed his former roommates for the child pornography on his devices). Moreover, "the evidence against the defendant was strong." *Ibid.*[2] Thus, the prosecutor's closing argument does not warrant reversal, even assuming it was improper.

## C. Cumulative Error

Neuhard next makes a cumulative-error claim. Neuhard is entitled to a new trial based on errors that are "harmless" when considered "in isolation" if, "[a]fter examining them together . . .

---

[1] We need not decide this issue to resolve Neuhard's claim.

[2] MV1 testified that Neuhard showed her pornographic videos on his red and black computer, and that one of the videos involved "a little girl." R. 123 at 629–30. She also testified that Neuhard used his cell phone to take pictures of himself touching her "private part." *Id.* at 635, 638. She identified herself in the photos found on the memory card in Neuhard's tablet. *Id.* at 637. Neuhard's zebra-striped bed linens were visible in some of the photos. The image files' metadata confirmed that they were taken at Neuhard's house using the same model of cell phone he owned.

we are left with the distinct impression that the due process was not satisfied[.]" *United States v. Parker*, 997 F.2d 219, 221 (6th Cir. 1993). Neuhard points to three errors: the case agent's testimony that his roommates were willing to take polygraphs, the district court's refusal to admit testimony that he offered to take a polygraph, and the government's closing-argument comments about grooming. Neuhard asserts that "the cumulative effect was toxic," Appellant Br. at 50, but he does not explain why the combined effect was a denial of due process. In particular, he points to no "connection, reliance, or relation" between the polygraph testimony and the grooming comments. *United States v. Daniel*, 932 F.2d 517, 521 (6th Cir. 1991). His conclusory assertion of cumulative error does not warrant a retrial.

## IV. Sentencing

Finally, Neuhard challenges two aspects of his sentence: a statutory enhancement based on a prior conviction, and the restitution the district court ordered him to pay. The first argument is meritless, and he forfeited the second.

### A. Statutory Enhancement

In 2006, when Neuhard was 17, he pled guilty to third-degree criminal sexual conduct in state court. He successfully completed a diversion program, so the state court dismissed the proceedings without entering a final judgment of conviction. In sentencing Neuhard in this case, the district court held that his 2006 guilty plea is a "prior conviction" that subjects him to a higher statutory sentencing range. 18 U.S.C. § 2251(e). On appeal, Neuhard argues that the sentencing enhancement is improper because his 2006 guilty plea is not a conviction under Michigan law. Our precedent forecloses this argument.

The jury convicted Neuhard of producing child pornography. *See* 18 U.S.C. § 2251(a). This offense usually carries a sentence of "not less than 15 years nor more than 30 years" in prison.

18 U.S.C. § 2251(e). However, the sentencing range rises to "not less than 25 years nor more than 50 years" if the defendant "has one prior conviction . . . under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography." *Ibid.* The district court applied the higher range and sentenced Neuhard to 35 years—above the statutory maximum absent the prior-conviction enhancement.

Neuhard entered his 2006 guilty plea pursuant to Michigan's Holmes Youthful Trainee Act. Under the YTA, "if an individual pleads guilty to a criminal offense, committed on or after the individual's seventeenth birthday but before his or her twenty-fourth birthday," the sentencing court "may, without entering a judgment of conviction and with the consent of that individual, consider and assign that individual to the status of youthful trainee." Mich. Comp. Laws § 762.11(1). If the defendant complies with certain conditions, "upon final release of the individual from the status as youthful trainee, the court shall discharge the individual and dismiss the proceedings." *Id.* § 762.14(1). The statute specifies that "[a]n assignment of an individual to the status of youthful trainee as provided in this chapter is not a conviction for a crime[.]" *Id.* § 762.14(2).

Neuhard completed two years of probation on youthful-trainee status, so the state court apparently dismissed the proceedings against him without entering a judgment of conviction. He now argues that his YTA guilty plea is not a "prior conviction" under Michigan law, so he is not subject to the 25-to-50-year enhanced sentencing range under § 2251(e), and his 35-year sentence exceeds the correct statutory maximum.[3] "We review de novo the district court's legal conclusion

---

[3] The argument heading and a few sentences in Neuhard's opening brief frame this as a due-process claim, but it appears to actually be a statutory-construction argument. He cites only one due-process case, and it is inapposite.

that a prior conviction is a qualifying offense" for a sentencing enhancement. *United States v. McGrattan*, 504 F.3d 608, 610 (6th Cir. 2007).

Neuhard's argument cannot overcome two high hurdles. First, as a general rule, federal law controls the question of whether a state adjudication is a "conviction" for purposes of a federal statute. *See Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 111–12 (1983) ("Whether one has been 'convicted' within the language of the gun control statutes is necessarily . . . a question of federal, not state, law, despite the fact that the predicate offense and its punishment are defined by the law of the State."). Of course, Congress could override this default rule with "a plain indication to the contrary[.]" *Id.* at 119 (cleaned up).

More to the point, we have already held that a YTA guilty plea "qualifies as a prior conviction for federal sentencing purposes[.]" *Adams v. United States*, 622 F.3d 608, 612 (6th Cir. 2010). *Adams* involved a provision raising the mandatory minimum sentence for certain federal drug offenses from five years to ten if the defendant "commits such a violation after a prior conviction for a felony drug offense has become final[.]" 21 U.S.C. § 841(b)(1)(B). We concluded that a YTA guilty plea is sufficient to trigger the § 841(b)(1)(B) enhancement, even though it does not result in a formal judgment of guilt. *Adams*, 622 F.3d at 612. And we noted that "Michigan's own sentencing scheme supports this view," as the state sentencing guidelines count YTA adjudications in a defendant's criminal-history score. *Id.* (citing Mich. Comp. Laws § 777.50(4)(a)).

Neuhard tries to get around both precedents in one stroke. He relies on § 2251(e)'s text, which refers to prior convictions "under the laws of any State[.]" According to Neuhard, this

---

In *People v. Temelkoski*, the Michigan Supreme Court held that retroactively requiring a defendant sentenced under the YTA to register as a sex offender deprived him of the benefits of his guilty plea, and therefore violated due process. 905 N.W.2d 593, 594 (Mich. 2018). *Temelkoski* does not support Neuhard's arguments, which are not grounded in retroactivity concerns.

phrase directs us to use state law to determine whether an adjudication is a conviction, negating

*Dickerson*'s default rule and distinguishing this case from *Adams*, where the federal sentencing

statute lacked a similar phrase. With these two cases out of the way, he urges, we should look to

Michigan law to conclude that a YTA guilty plea is not a conviction.

We disagree. Looking at a longer excerpt of the statutory text reveals the problem with

Neuhard's argument. The statute provides that:

> Any individual who violates . . . this section shall be . . . imprisoned not less than 15 years nor more than 30 years, but if such person has one prior conviction under this chapter, section 1591, chapter 71, chapter 109A, or chapter 117, or under section 920 of title 10 (article 120 of the Uniform Code of Military Justice), or under the laws of any State relating to aggravated sexual abuse, sexual abuse, abusive sexual contact involving a minor or ward, or sex trafficking of children, or the production, possession, receipt, mailing, sale, distribution, shipment, or transportation of child pornography, such person shall be . . . imprisoned for not less than 25 years nor more than 50 years[.]

18 U.S.C. § 2251(e). In plain English, a violation of § 2251 usually carries a sentence of 15 to 30

years. There are two ways to increase the range to 25 to 50 years: if the defendant has a prior

conviction under one of the listed federal sex-offense statutes, or if the defendant has a prior

conviction under a state statute that criminalizes the same kind of conduct. Section 2251(e) tells

the sentencing court to analyze the *subject* of the state law, not (as Neuhard contends) the present

status of the prior judgment under state law. If Congress wanted to override *Dickerson*'s default

rule and have state law determine what counts as a conviction, it would have said so more

explicitly. *See, e.g.*, 18 U.S.C. § 921(a)(20) ("What constitutes a conviction of such a crime shall

be determined in accordance with the law of the jurisdiction in which the proceedings were held.").

Thus, *Adams* and *Dickerson* control this case. We hold, in accordance with *Adams*, that Neuhard's YTA guilty plea is a "prior conviction" for the purposes of § 2251(e).[4] The district court correctly calculated a statutory sentencing range of 25 to 50 years, and the 35-year sentence does not exceed the statutory maximum.

## B. Restitution

Finally, in his opening brief, Neuhard challenged the district court's restitution order, arguing that the court improperly used a tort proximate-cause standard to calculate the amount he owed. As Neuhard concedes in his reply brief, we cannot consider this argument.

After the sentencing hearing, the district court entered an initial judgment imposing terms of imprisonment and supervised release. It subsequently held a second hearing to determine the amount of restitution, after which it entered an amended judgment. Neuhard filed a notice of appeal from the initial judgment, but he did not file a second notice of appeal from the amended judgment. The government objects to appellate review of the restitution award.

In this circumstance, we cannot review the restitution award. *Manrique v. United States*, 137 S. Ct. 1266, 1274 (2017) ("[A] defendant who wishes to appeal an order imposing restitution in a deferred restitution case must file a notice of appeal *from that order*." (emphasis added)).

## V. Conclusion

For these reasons, we **AFFIRM** the denial of Neuhard's motion to suppress, the judgment of conviction and sentence, and the amended judgment.

---

[4] The D.C. Circuit has held that a Michigan YTA guilty plea triggers a similar sentencing enhancement in another federal child-pornography statute, 18 U.S.C. § 2252A(b)(2). *United States v. Bruns*, 641 F.3d 555, 558 (D.C. Cir. 2011). The *Bruns* court conducted its own analysis of Michigan law, but we do not need to reach these issues in light of *Adams*.