AGEE, Circuit Judge,
dissenting:
“When a defendant pleads guilty, he waives all nonjurisdictional defects in the proceedings conducted prior to entry of the plea” and “has no non-jurisdictional ground upon which to attack that judgment except the inadequacy of the plea.” United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir.2010). As the Supreme Court has explained,
when a criminal defendant enters a guilty plea, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. Rather, a person complaining of such antecedent constitutional violations is limited ... to attacks on the voluntary and intelligent nature of the guilty plea.
Blackledge v. Perry, 417 U.S. 21, 29-30, 94 S.Ct. 2098, 40 L.Ed.2d 628 (1974) (internal citations and quotation marks omitted).
Recognizing the bar on a stand-alone collateral attack to the search warrant issued in this case, Fisher instead advances a claim that his plea was involuntary, i.e., “inadequate.” See Moussaoui, 591 F.3d at 279. His argument, distilled to its essence, is that he would not have pled guilty had he been aware that Officer Lunsford fabricated certain facts on the application for a search warrant in this case. Although the Supreme Court has held that “[a] defendant is not entitled to withdraw his plea merely because he discovers long after the plea has been accepted that his calculus misapprehended the quality of the State’s case,” Brady v. United States, 397 U.S. 742, 757, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970),[1] Fisher seeks to avail himself of a narrow exception to that principle that applies to pleas induced by “misrepresentation or other impermissible conduct by state agents,” id.
As best I can glean from Fisher’s briefs, he raises two distinct claims that he posits fit under this undefined and rarely applied exception: (1) that the government failed to meet its evidentiary disclosure obligations based on Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); and (2) the pre-plea misconduct of Officer Lunsford independently rendered his guilty plea involuntary irrespective of any Brady v. Maryland violation.
The majority opinion concludes that Fisher’s plea of guilty was involuntary because of “affirmative misrepresentations” made by Officer Lunsford in applying for the search warrant that uncovered evidence against Fisher. In so doing, the majority relies on an independent theory *471 of prosecutorial misconduct purportedly grounded in Brady v. United States. Indeed, while the majority avers that its holding is based on Brady v. United States, its application of the “material misrepresentation” standard in this case lacks support in any published case from any court. While the majority attempts to distinguish the several cases militating against Fisher’s claim to relief, it identifies no authority actually in support of its position. In short, I am at a loss to identify the basis in due process jurisprudence upon which the majority opinion bases its decision.
With that handicap, I address below the theories presented by Fisher in his brief on appeal and conclude he is not entitled to withdraw his guilty plea. As the learned district court judge correctly determined, Fisher is bound to his guilty plea, and the majority opinion articulates no reasoned basis founded in the established precedent of the Supreme Court, or any other court, to decide otherwise.
I. Brady v. Maryland Claim
Fisher’s initial assignment of error is that the prosecution in this case violated the government’s disclosure obligations under Brady v. Maryland, so as to render his guilty plea involuntary.[2] In Brady v. Maryland, the Supreme Court held that “the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution.” 373 U.S. at 87, 83 S.Ct. 1194. The Supreme Court subsequently extended the Brady v. Maryland disclosure rule to material impeachment evidence, Giglio v. United States, 405 U.S. 150, 154-55, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972), and jettisoned any requirement that a defendant must request exculpatory evidence in order to be entitled to its disclosure, United States v. Agurs, 427 U.S. 97, 107, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).
However, Fisher cannot avail himself of a Brady v. Maryland claim as the basis upon which to withdraw his guilty plea. In United States v. Ruiz, 536 U.S. 622, 122 S.Ct. 2450, 153 L.Ed.2d 586 (2002), the Supreme Court explicitly rejected the claim that a guilty plea is involuntary merely because the prosecution failed to disclose impeachment evidence to the accused prior to the plea. See id. at 629, 122 S.Ct. 2450 (“[Ijmpeachment information is special in relation to the fairness of a trial, not in respect to whether a plea is voluntary (‘knowing,’ ‘intelligent,’ and ‘sufficiently aware.’ ”) (emphasis in original) (brackets omitted)). The Court explained that the Constitution “does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor.” Id. at 630, 122 S.Ct. 2450. Thus, a court may accept a guilty plea as valid notwithstanding a prosecutorial failure to disclose evidence casting doubt on the credibility of government witnesses. This Court has explicitly recognized that distinction: “The Brady [v. Maryland] right, however, is a trial right.... [It] exists to ... minimize the chance that an innocent person would be found guilty.... When a defendant pleads guilty, those concerns are almost completely eliminated because his guilt is admitted.” Moussaoui, 591 F.3d at 285.
Any Brady v. Maryland claim Fisher might have is controlled by and subsumed under Ruiz. The evidence Fisher cites *472 here, and relied upon by the majority, is precisely that addressed in Ruiz: impeachment evidence. Fisher does not complain that the prosecution withheld evidence that would be exculpatory of him; that is, would show his innocence. Rather, Fisher complains that had he known of Officer Lunsford’s misconduct (lying about the true identity of the informant), he would have sought to attack Lunsford’s reputation for veracity so as to discredit by inference Lunsford’s other statements in the warrant affidavit. In other words, he would have sought to impeach Officer Lunsford’s credibility by virtue of the false statement, not use the evidence as affirmative proof of his own innocence.
Indeed, neither Fisher or the majority cite any evidence Fisher’s attack on Lunsford’s credibility would yield as exculpatory to him. Damaging Lunsford’s credibility by impeaching his testimony is no more exculpatory than any other evidence viewed as tainted by virtue of the witness’ lack of credibility: that is the essence of impeachment.
As discussed more fully below, we also know that the evidence Fisher seeks to discredit does not show affirmative proof of Fisher’s innocence because Fisher himself does not assert that he is innocent of the crime to which he pled guilty. The discrediting • of Lunsford on the basis of his false identification of the name of the confidential informant is unquestionably impeachment evidence, as it does not “establish!] the factual innocence of the defendant.” Ruiz, 536 U.S. at 631, 122 S.Ct. 2450. Consequently, Ruiz flatly forecloses Fisher’s claim of error to the extent he basis it on Brady v. Maryland.
Even if one were to assume, however, that the evidence at issue here is affirmatively exculpatory (quite an extraordinary stretch), rather than merely for impeachment purposes, there is no existing precedent from the Supreme Court or this Court that entitles Fisher to relief on the basis of his pre-plea claim.
The Brady [v. Maryland ] right ... is a trial right. It requires a prosecutor to disclose evidence favorable to the defense if the evidence is material either to guilt or punishment, and exists to preserve the fairness of a trial verdict and to minimize the chance that an innocent person would be found guilty.
Moussaoui, 591 F.3d at 285 (emphasis in original). As we also observed in Moussaoui, the Supreme Court’s decision in Ruiz was predicated on the notion that, when a defendant pleads guilty, Brady v. Maryland’s concerns in preventing the conviction of an innocent defendant “are almost completely eliminated because his guilt is admitted.” Id. Accord United States v. Mathur, 624 F.3d 498, 507 (1st Cir.2010) (“It is ... universally acknowledged that the right memorialized in Brady [v. Maryland ] is a trial right.”). More to the point, to the extent that this Court has ventured into the arena of whether Ruiz portends a foreclosure of any Brady v. Maryland right in the pre-plea context (which is the case here), we concluded such a claim was not recognized: the exact opposite of the majority opinion’s end result here. See Jones v. Cooper, 311 F.3d 306, 315 n. 5 (4th Cir.2002) (“To the extent that appellant contends that he would not have pled guilty had be been provided the information held by the jailor, this claim is foreclosed by ... Ruiz.”). In other words, Cooper held that Ruiz foreclosed a defendant’s contention that he would not have pled guilty had he been provided certain death penalty mitigation evidence prior to the entry of his guilty plea. The Supreme Court has not extended a Brady v. Maryland right in the context of Fisher’s case: pre-plea conduct unrelated to a trial. And this Court has explicitly declined to decide whether “the prosecution’s failure to disclose material exculpatory evidence at the *473 plea stage could result in an unknowing plea in certain narrow circumstances.” Moussaoui, 591 F.3d at 286 (emphasis added). If the majority wishes to venture where neither the Supreme Court or this Court has seen fit to go, it is incumbent to set out the reasoned analysis based on settled precedent that permits that step. The majority opinion does not do so.[3]
Finally, even if this Court were to hold, absent any supporting precedent, that Brady v. Maryland extends pre-plea to evidence pertaining to a motion to suppress, and even if one assumed that the evidence suppressed in this case was construed as directly exculpatory (which it is not), it is by no means certain that Fisher would have prevailed in seeking to suppress the fruits of the search warrant in this case. Pursuant to Franks v. Delaware, 438 U.S. 154, 171, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), a defendant challenging the validity of the warrant has the burden to come forth with proof of a “deliberate falsehood or of reckless disregard for the truth.” Even if the defendant carries that burden, Franks requires only that the demonstrably false information be set aside. Id. at 171-72, 98 S.Ct. 2674. If the remaining content of the warrant still supports probable cause, the defendant is not entitled to a hearing on his Franks claim. Id. at 172, 98 S.Ct. 2674.
The majority assumes, without analysis or citation to authority, that the mere fact of Lunsford’s misrepresentation made the Fisher search warrant invalid: a form of res ipsa loquitor. But neither logic, the record, or precedent support the majority’s assumption. Lunsford was accused of “falsely attributpng] information to informants who then shared reward money with him.” (J.A. 136.) After his arrest by federal authorities, Lunsford admitted only that another individual was the actual source of the information that formed the basis for the application to search Fisher’s home. (See J.A. 65 (“[Redacted] was the real informant on the Cortez Fisher case.”).) In other words, Lunsford admitted he substituted the name of another person for that of the real informant so as to receive his kickback once the informant received his “reward.” However, neither Fisher’s admission or any other record evidence shows that any item of information on the search warrant was untrue but for the substitution of the name of the informant. While that obviously is viable impeachment evidence, the record also reflects that Lunsford admitted in other cases — but not Fisher’s — that the actual allegations of wrongdoing were false. (See J.A. 57-60.) The record in this case only shows the switch of the name of the informant and nothing more. Consequently, the majority opinion’s statement that the search warrant “issued solely on the basis of an untruthful law enforcement affidavit” is a bit of hyperbole in the context of the record as a whole. Ante at 467.
A district court could, reviewing the record evidence upon impeachment of Luns-ford, conclude that the Fisher warrant application was false. However, the court could also reasonably conclude that Luns- *474 ford fabricated only the identity of the source of the information and that the stated events were not falsified and met the probable cause standard for issuance of the search warrant. In that circumstance, a motion to suppress would fail, as the information necessary for probable cause was unrelated to the actual misstatement contained in the affidavit. See United States v. Doyle, 650 F.3d 460, 468 (4th Cir.2011) (“[Fjalse information will only void a warrant if the information was necessary to the finding of probable cause.”).
Indeed, Franks itself contemplates that the mere fact that a warrant affiant lied with respect to one piece of information does not mean that the entirety of the affidavit should be invalidated. See Franks, 438 U.S. at 155-56, 98 S.Ct. 2674 (“[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant’s request.”) (emphasis added). The defendant must prove that the facts necessary for probable cause were lies as well.
In discussing the underlying merits of Fisher’s potential Franks claims, the majority establishes only that Lunsford misattributed the source of the information contained in the warrant application. Nevertheless, the majority opinion concludes that the rest of the information was necessarily untrue. See, ante at 468 (“[Tjhe confidential informant listed on the search warrant affidavit did not provide all of the above-mentioned information. Without that information, a district court could reasonably conclude that Lunsford’s search warrant affidavit failed to establish probable cause.”). But that conclusion does not follow logically from the record in this case. Lunsford admitted only to falsifying the source, not the information itself. Thus, only the source informant would necessarily be excised under Franks. The information itself could reasonably survive the scalpel of the Franks inquiry.
Moreover, there is no merit to the majority opinion’s repeated suggestion that the district court somehow implied that Fisher would succeed on a motion to suppress. The district court, in its order denying Fisher’s § 2255 motion, did state that Fisher would have moved to suppress. But the court expressly declined to speculate on the likelihood of success of such a motion, simply stating “the motion may well have been successful.” (J.A. 136 (emphasis added).) Conversely, the motion “may well” have failed. In any event, there is nothing “concrete! ],” ante at 468, about the court’s description of the likelihood of success of a motion to suppress, and any effort to say otherwise misreads the district court’s actual words.
Accordingly, I would hold that under the facts of this ease, where the evidence at issue is not exculpatory, but impeachment only, and where the defendant does not contest his guilt, the type of disclosures required by Brady v. Maryland and its progeny are not required as a predicate for a knowing, voluntary plea of guilty. Consequently, Fisher has no basis under Brady v. Maryland upon which to withdraw his guilty plea.
II. Independent Prosecutorial Misconduct Claim
I turn next to Fisher’s argument that certain prosecutorial misconduct, not cognizable under Brady v. Maryland, justifies setting aside his plea. Significantly, neither Fisher’s brief on appeal nor the majority opinion cites any authority directly on point or defines the due process right of which Fisher seeks to avail himself. I *475 assume that is so because the weight of authority militates against Fisher’s claim and compels affirming the district court’s judgment.
As the Supreme Court explained in Brady v. United States
A plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor’s business (e.g. bribes).
397 U.S. at 755, 90 S.Ct. 1463 (quoting Shelton v. United States, 246 F.2d 571, 572 n. 2 (5th Cir.1957) (en banc)). From this language, Fisher argues, and the majority agrees, that the “misrepresentations” by Lunsford “underpin[ ] the entire case made against [Fisher] and induced his guilty plea.” Ante at 465. A closer analysis of the relevant authorities, however, reveals little, if any, support for the majority’s formulation of an otherwise undefined and unsupported due process claim.
To be sure, the Brady v. United States opinion states, without illumination or explanation, that “misrepresentations” that induce a guilty plea may be grounds upon which to void a prior guilty plea. 397 U.S. at 755, 90 S.Ct. 1463. Contrary to the majority’s statement, at 465, that “Brady v. United States does not limit government misrepresentations to prosecutorial promises designed to elicit a guilty plea,” a close reading of that case reflects the scope of the court’s meaning was in fact strictly limited and referred only to false representations directly designed to induce a defendant to plead guilty. The Court’s frame of reference in Brady v. United States did not encompass actions tangentially related to the plea process, like a warrant application months in advance of the defendant’s guilty plea. Even the examples of misrepresentations and impermissible conduct provided by the Court (“unfulfilled or unfulfillable promises” and “bribes”) relate directly to prosecutorial actions specifically designed to elicit a plea of guilty.[4] Although the majority asserts that Brady v. United States was not so limited, it identifies no case involving a misrepresentation so remotely divorced from the plea process as the warrant application at issue in this case.
For purposes of Brady v. Maryland, the Supreme Court has held that knowledge of agents acting on the government’s behalf, including the police, can be imputed to the prosecutor. See Kyles v. Whitley, 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (“[P]rosecutor has a duty to learn of any favorable evidence known to the others acting on the government’s behalf in the case, including the police.”). But see United States v. Robinson, 627 F.3d 941, 952 (4th Cir.2010) (“[I]t is one thing to require prosecutors to inquire about whether police have turned up exculpatory or impeachment evidence during their investigation. It is quite another to require them, on pain of a possible retrial, to conduct disciplinary inquiries into the *476 general conduct of every officer working the case.”)- But the majority opinion cites no authority for the proposition that police misconduct, happening months before the entry of the guilty plea and devoid of any direct inducement of that plea, must be attributed to the prosecution for purposes of Fisher’s stand alone prosecutorial misconduct claim relying on Brady v. United States. Even assuming that Lunsford’s falsification of the informant’s true identity in the warrant application- — -known only to him — is attributable to the prosecution in a later proceeding, neither the majority nor Fisher cite to any precedent applying an amorphous Brady v. United States “right” in that circumstance.
Indeed, the case both Fisher and the majority utilize to bear most of the weight in support of his claim, the First Circuit’s decision in Ferrara v. United States, 456 F.3d 278 (1st Cir.2006), is materially distinguishable from the case at bar and essentially discredits both Fisher’s arguments and the majority opinion.[5] In Ferrara, the court opined that “[u]nder limited circumstances ... the prosecution’s failure to disclose evidence may be sufficiently outrageous to constitute the sort of impermissible conduct that is needed to ground a challenge to the validity of a guilty plea.” 456 F.3d at 291. In that case, however, the “outrageous” conduct consisted of “manipulate[ing]” a witness, and then “representing] to the court and the defense that the witness was going to confirm [a] story” inculpating the defendant in a murder plot, when in fact the witness had provided the government with affirmative evidence of the defendant’s innocence. Id. The government conduct at issue in Ferrara went directly to exculpatory evidence of the actual innocence of the defendant as the prosecution secreted witness testimony that the defendant did not commit the crime with which he was charged.
Ferrara is fundamentally distinguishable on three significant levels from the ease at bar. First, the defendant in Ferrara asserted that he was innocent of the offence to which he pled guilty. See Ferrara v. United States, 384 F.Supp.2d 384, 388 (D.Mass.2005) (“Ferrara informed the Probation Department that he had not been involved in the ... murder, but pled guilty to those charges because he was in an ‘untenable’ position.”). Fisher makes no such claim, essentially arguing that he deserves to withdraw his guilty plea because Lunsford did a bad thing. But even the majority opinion acknowledges that, after Ruiz, “courts have considered a defendant’s factual innocence in determining whether the government’s failure to disclose material evidence render[s] a guilty plea involuntary.” Ante at 467.
Second, in Ferrara, the prosecutor was actively involved in witness manipulation and suppression of affirmative evidence tending to show the defendant’s innocence (i.e., he didn’t do it). Here, no one but Lunsford was aware of his false statements. When the prosecution discovered Officer Lunsford’s misdeeds, it promptly disclosed that information to Fisher.
Finally, unlike the present case, the evidence at issue in Ferrara went directly to the defendant’s innocence; it was clearly exculpatory evidence. See Ferrara, 456 F.3d at 292 (“The evidence in question ... was plainly exculpatory.”). As noted at length above, Fisher’s evidence is not.
These distinguishing factors discussed in Ferrara as substantiating application of the narrow exception in Brady v. United *477 States are simply not present in the case at bar. And without the lone support of the out of circuit authority in Ferrara, Fisher’s argument and the majority opinion collapse. Indeed, Brady v. United States counsels that Fisher should be held to his plea. See Brady v. United States, 397 U.S. at 755, 90 S.Ct. 1463 (“A plea of guilty entered by one fully aware of the direct consequences ... must stand unless induced by threats ... misrepresentation ... or ... by promises that are by their nature improper as having no proper relationship to the prosecutor’s business.” (emphasis added)).
The apparent lynchpin for the majority’s ultimate conclusion appears to be that, notwithstanding all the foregoing, Fisher’s case is somehow distinguishable because it “centers not on the government’s failure to disclose evidence, but rather on its affirmative misrepresentations.” Ante at 467. This is a distinction without meaning which seems self evident from the lack of any authority in the majority opinion to support its conclusion.
The distinction between misrepresentations and omissions is a false dichotomy. In Ferrara, the prosecution was under a continuing pre-trial obligation, pursuant both to the local rules of that district and a continuing court order, to disclose “all evidence within the government’s ken that tended to negate a defendant’s guilt.” 456 F.3d at 292 (emphasis in original). The prosecution’s failure to disclose the exculpatory evidence was, in that case, not materially different from a false representation to the defendant that it had no exculpatory evidence. See id. at 293 (“[I]t is fair to say that the government ... impliedly promised that it would provide the petitioner with all exculpatory evidence.”). Yet the Ferrara court focused on the exculpatory nature of the evidence in question, rather than on the fact that the government falsely represented that it had complied with its disclosure obligations.
The majority’s reliance on the distinction, such as it is, between omissions of evidence and misrepresentations of that same evidence is simply misplaced. Courts have instead focused the inquiry, quite appropriately, on whether the evidence goes to the guilt or innocence of the defendant. See, e.g., Brady v. United States, 397 U.S. at 758, 90 S.Ct. 1463 (“we have no reason to doubt that [the defendant’s] solemn admission of guilt was truthful”); Ruiz, 536 U.S. at 628, 122 S.Ct. 2450 (describing a constitutional question concerning “a federal criminal defendant’s waiver of the right to receive from prosecutors exculpatory impeachment material” (emphasis added)); Matthew v. Johnson, 201 F.3d 353, 365 (5th Cir.2000) (courts assessing whether a defendant’s plea is valid may “consider such factors as whether there is evidence of factual guilt”); Ferrara, 456 F.3d at 292 (“The evidence in question ... was plainly exculpatory.”).
Once again, Fisher does not contend that he is innocent of the offense to which he pled guilty. Nor is there record evidence representing affirmative proof of his innocence. In these circumstances, I am in agreement with the district court that “a failure to allow Fisher to withdraw his guilty plea would [not] result in a miscarriage of justice.” (J.A. 136 (quotation marks omitted).)[6]
*478 In sum, because neither Fisher nor the majority opinion identifies the basis for, or the contours of, the undefined due process right of which Fisher seeks to avail himself, Fisher must be bound by his guilty plea, a “solemn admission[ ] in open court that he committed the act with which he [was] charged.” Brady v. United States, 397 U.S. at 757, 90 S.Ct. 1463.
III. Conclusion
To be clear, I certainly agree with the majority that Lunsford’s conduct in falsifying the identity of the informant on the search warrant was reprehensible. But our natural reaction of extreme distaste to Lunsford’s criminal act does not instantaneously transform Fisher’s guilty plea into some form of due process violation that permits him to now withdraw that plea. Only a well-grounded application of settled precedent would permit such an extraordinary result. With respect for my distinguished colleagues, that indispensable factor is missing in the majority opinion.
For all of the reasons discussed above, I believe the majority opinion errs in reversing the judgment of the district court. Under either the traditional Brady v. Maryland framework, or some form of claim under Brady v. United States claim, Fisher is not entitled to the relief he seeks. The district court did not err in denying Fisher’s motion to vacate his conviction and sentence under 28 U.S.C. § 2255. I respectfully dissent.

. Because this opinion involves extensive discussion of Brady v. United States, as well as Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), I refer to each by its long title to lessen the likelihood of confusion.

. The majority, basing its holding on Brady v. United States, does not address Fisher’s Brady v. Maryland argument. As explained herein, I would reject this aspect of Fisher's claim.

. The Supreme Court’s due process concerns as articulated in Brady v. Maryland are de minimis in a case where the defendant makes no contention that he is innocent of the offense charged. Rather, the evidence of Officer Lunsford's misconduct would be relevant only to the issue of suppression of evidence, not Fisher's guilt or innocence. A suppression hearing, of course, has nothing to do with "minimiz[ing] the chance that an innocent person would be found guilty.” Moussaoui, 591 F.3d at 285. Rather than shedding light on Fisher’s guilt or innocence, a suppression hearing in this case would function only in determining whether Fisher’s constitutional rights had been violated. In short, vacating Fisher's guilty plea would do nothing to advance the dueprocess interests articulated in Brady v. Maryland.

. The cases cited by the majority in support of its "affirmative misrepresentation” theory all involve prosecutorial actions directly related to the plea process. Ferrara v. United States, 456 F.3d 278, 293 (1st Cir.2006) involved an active attempt by the prosecution to suppress evidence exculpatory to the defendant, and Santobello v. New York, 404 U.S. 257, 259, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971), United States v. Ayala, 601 F.3d 256, 270 (4th Cir.2010), Correale v. United States, 479 F.2d 944, 946 (1st Cir.1973), and United States v. Hammerman, 528 F.2d 326, 331-32 (4th Cir.1975) all involved false (or allegedly false) promises made by the prosecution during plea negotiations.

. In Ferrara, the First Circuit explicitly declined to address whether the defendant had a constitutional right to Brady v. Maryland disclosures prior to entry of his plea. Ferrara, 456 F.3d at 290.

. The majority identifies one final basis for granting relief: that suspects in other cases who discovered Lunsford’s misconduct prior to pleading guilty were able to negotiate plea agreements with more favorable terms. It would therefore be unfair to Fisher to hold him to his plea, which was entered before he learned of Lunsford’s misdeeds. Ante at 469-70.
This appeal to an undefined notion of fairness, however, is not tethered to any authority whatsoever. It has nothing to do with whether Fisher's plea was knowing and voluntary, and is in no way indicative of whether the plea was invalid.