**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

NICHOLAS JAMES NEEDHAM,
*Defendant-Appellant*.

No. 12-50097

D.C. No.
8:11-cr-00042-
CJC-1

OPINION

Appeal from the United States District Court
for the Central District of California
Cormac J. Carney, District Judge, Presiding

Argued and Submitted
April 8, 2013—Pasadena, California

Filed June 14, 2013

Before: Marsha S. Berzon, Richard C. Tallman,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Concurrence by Judge Berzon;
Concurrence by Judge Tallman

## SUMMARY[*]

### Criminal Law

The panel affirmed the district court's denial of a motion to suppress evidence of child pornography found on the defendant's iPod during a search of his residence.

The panel held that the "good faith" exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897 (1984), applies where the search was executed in objectively reasonable reliance on a search warrant predicated on the bare inference that those who molest children are likely to possess child pornography. The panel explained that this outcome is controlled by this court's grant of qualified immunity in an appeal arising from a civil suit in *Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011).

Judge Berzon concurred only because the outcome is dictated by *Dougherty*. She would hold that the evidence must be suppressed because the warrant was so lacking in probable cause as to render the officers' reliance upon it objectively unreasonable.

Judge Tallman concurred because the panel's decision is compelled by existing precedent. If the slate were clean, he would also agree with the issuing magistrate that under the totality of the circumstances, probable cause existed to search the defendant's home for child pornography.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Matthew B. Larsen (argued), Deputy Federal Public Defender and Sean K. Kennedy, Federal Public Defender, Office of the Federal Public Defender, Los Angeles, California, for Appellant.

Douglas F. McCormick (argued), Dennise D. Willett, and Anne C. Gannon, Assistant United States Attorneys; and André Birotte Jr., United States Attorney, Santa Ana, California, for Appellee.

**OPINION**

M. SMITH, Circuit Judge:

An Orange Police Department (OPD) officer obtained a warrant to search Nicholas James Needham's residence for evidence of a child molestation. The officer also obtained permission in the warrant to search Needham's home for child pornography. Among other things, the warrant affidavit explained that in the requesting officer's opinion, individuals who have a sexual interest in children often possess child pornography. A magistrate signed the warrant in reliance on the warrant affidavit, and, while conducting the search, the OPD found images and videos of child pornography on an iPod at Needham's residence.

Needham moved to suppress the evidence of child pornography seized during the OPD's search on the ground that the OPD lacked probable cause to suspect that Needham possessed child pornography. The district court denied Needham's motion, concluding that the "good faith"

exception to the exclusionary rule announced by the Supreme Court in *United States v. Leon*, 468 U.S. 897 (1984), applied because the officers' reliance on the warrant was objectively reasonable.

Needham appeals the district court's denial of his motion to suppress. We affirm the decision of the district court.

## BACKGROUND

In June 2010, a mother reported to the OPD that her five-year-old son had been molested in the restroom at a local mall. Specifically, she indicated that after her son emerged from the bathroom, he told her that a man had touched him. He motioned toward his groin area, which his mother took to mean that the man had touched his penis. The mother walked back toward the restroom with her son, where she saw, sitting on a bench near the restrooms, a man whom she had seen exit the bathroom just prior to her son's doing so. When the mother asked her son if the man sitting on the bench was the man who had touched him, he confirmed that it was. He later stated that the man had touched his exposed penis with his fingers "soft" and "quickly."

The mother described the man to the OPD as being a light-skinned white male in his late twenties or early thirties who had been wearing beige pants and a collared, long-sleeved shirt that was white with blue stripes. She also stated that he had been holding a cup bearing the Jamba Juice logo when she saw him exit the restroom.

OPD Youth Services Bureau Detective Leslie Franco investigated the incident. Detective Franco contacted the manager of the Jamba Juice location at that mall, and

reviewed the store's surveillance footage. She observed a man who matched the mother's description of the suspect, and ascertained from the store's transaction records that he had given his name as "Nick" when he purchased his drink. She also obtained the last four digits of the American Express credit card he had used to purchase his beverage, as well as the transaction's authorization number. The boy's mother also viewed the surveillance footage, and she identified "Nick" as the man she had seen exiting the restroom, and whom her son later identified.

Detective Franco contacted American Express and ascertained, pursuant to a search warrant, that the American Express card "Nick" used at Jamba Juice belonged to Needham. She then discovered, among other things, that Needham resided in Orange, and that he was a registered sex offender in the State of California. Records also indicated that Needham had been arrested in May 2000, when he was 16 years old, for allegedly violating California Penal Code § 288(a), which prohibits lewd or lascivious acts with a child under the age of 14. He had ultimately been charged with violating California Penal Code § 288(a); California Penal Code § 288.5, which criminalizes continuous sexual abuse of a child under the age of 14; and California Penal Code § 311.2, which prohibits the possession of obscene matter.

Detective Franco sought a warrant to search Needham's home, person, and automobile. Her sworn "Statement of Probable Cause" included all of the facts described above, including Needham's criminal history and registration as a sex offender, though the warrant did not indicate for what offense Needham was ultimately convicted. The affidavit also included the following paragraph:

Based upon my training and experience, NEEDHAM'S previous criminal history, and my discussions with other law enforcement professionals, I believe that NEEDHAM has an unnatural sexual interest in children. I have learned the following characteristics are found to exist and be true in cases involving persons who molest children, buy, produce, sell, or trade child pornography and who are involved with child prostitutes. They receive sexual gratification and satisfaction from actual physical contact with minors, communications with minors and from fantasy involving the use of pictures, photographs or electronic media and writing on or about sexual activity with minors. These people collect sexually explicit material of children consisting of photographs, magazines, motion pictures, video tapes, DVD's, electronic media, books and slides which they use for their own sexual gratification and fantasy. Such persons rarely, if ever, dispose of their sexually explicit materials, especially when they have taken the photographs or made the video involved, as these materials are treated as prized possessions.

Detective Franco did not elaborate how she had learned the "characteristics" of those with a sexual interest in children, although she stated in the affidavit that she had been assigned to the Youth Services Bureau in December 2009, and in that capacity specialized in the investigation of crimes against children. Detective Franco also stated in the affidavit that prior to that assignment, she had worked as a patrol officer,

bike team officer, crime scene investigator, property crimes detective, and school resource officer, as well as in an undercover capacity in numerous narcotics and vice operations.

The warrant application included a list of items sought by the OPD. The warrant authorized a search for any clothing matching the description of what Needham was wearing at the mall the day that he was suspected of molesting the boy. It also authorized a search for the American Express card that "Nick" had used at Jamba Juice. But the substantial majority of the approximately three-and-a-half page description of items to be searched was devoted to describing an exhaustive search through all of Needham's paper documents and electronic and digital storage devices for child pornography, or evidence of possession or distribution of child pornography. Other than Detective Franco's opinions regarding the predilections of individuals who are sexually interested in children, the warrant did not provide any other reason to believe that Needham possessed child pornography in his home. Nor did the affidavit include any facts suggesting that Needham possessed or used a computer or any other electronic devices, whether for illicit purposes or otherwise.

A judge of the Orange County Superior Court signed the search warrant, and the OPD executed a search of Needham's residence. Officers seized various computers and electronic devices, among which was an Apple iPod. The iPod was later discovered to contain images and videos of child pornography. Needham was arrested and indicted for possessing child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). He moved to suppress the items taken pursuant to the OPD's search of his apartment, including the

iPod. Needham argued that the warrant was not supported by probable cause that he possessed child pornography, and that the lack of probable cause was so glaring that the *Leon* exception did not apply.

The district court denied Needham's motion to suppress. Without commenting on whether the warrant was supported by probable cause, the court ruled that the OPD executed the search in good faith reliance on the warrant, and that the *Leon* exception to the exclusionary rule applied.

Reserving his right to appeal the district court's denial of his suppression motion, Needham pled guilty to possession of child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). The district court imposed a sentence of 108 months' imprisonment. Needham now appeals his conviction and again argues that the evidence of his possession of child pornography should be suppressed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

## STANDARD OF REVIEW

A district court's denial of a motion to suppress evidence, including the application of the "good faith" exception to the exclusionary rule, is reviewed *de novo*. *See United States v. Krupa*, 658 F.3d 1174, 1177 (9th Cir. 2011); *United States v. Michaelian*, 803 F.2d 1042, 1046 (9th Cir. 1986).

## DISCUSSION

Needham first contends that the warrant affidavit did not contain facts sufficient to find probable cause to search his residence for child pornography. In particular, he argues that Detective Franco's assertions that Needham "has an unnatural

sexual interest in children" and that "[t]hese people collect sexually explicit material of children" are inadequate to support probable cause that Needham possessed child pornography in his home.  He also contends that the district court erred in applying *Leon*'s good faith exception to the exclusionary rule in this case.

"Probable cause exists when 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"  *United States v. Grubbs*, 547 U.S. 90, 95 (2006) (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)).  Even if a warrant is unsupported by probable cause, however, suppression of the evidence found in a search pursuant to that warrant is not justified if "the officers' reliance on the magistrate's determination of probable cause was objectively reasonable . . . ."  *Leon*, 468 U.S. at 926.  Suppression, therefore, "remains an appropriate remedy when a warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable."  *United States v. Grant*, 682 F.3d 827, 836 (9th Cir. 2012) (internal quotes and citation omitted).

While the *Leon* doctrine pertains to suppression hearings in criminal proceedings, "the same standard of objective reasonableness that [the United States Supreme Court] applied in the context of a suppression hearing in *Leon* defines the qualified immunity accorded an officer who obtained or relied on an allegedly invalid warrant."  *Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 n.1 (2012) (internal quotes and citations omitted).  The Supreme Court has explained that "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost."  *Malley v. Briggs*, 475 U.S. 335, 344–45 (1986)

(internal citation omitted). It therefore follows that if an officer is granted qualified immunity in a civil suit for relying on a warrant alleged to be lacking probable cause, then reliance on the existence of probable cause in that warrant must also have been objectively reasonable under the *Leon* doctrine.

The outcome of this aspect of Needham's appeal is controlled by our grant of qualified immunity in a similar case decided after the search of Needham's residence. In *Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011), we addressed the issue of whether an officer's opinion that individuals who molest children are likely to possess child pornography creates probable cause to search a suspected child molester's home for child pornography. *Dougherty* was a civil suit filed under 42 U.S.C. § 1983. Dougherty, an elementary school teacher, alleged that the police had searched his computer and electronic media without probable cause, in violation of the Fourth Amendment. *Dougherty*, 654 F.3d at 896–97. There, the requesting officer's affidavit recounted allegations that the individual had inappropriately touched students at the elementary school where he taught. *Id*. at 896. With respect to the search for child pornography, the affidavit stated only that "based upon [the officer's] training and experience . . . subjects involved in this type of criminal behavior have in their possession child pornography . . . .'" *Id.* We held that

> a search warrant issued to search a suspect's home computer and electronic equipment lacks probable cause when (1) no evidence of possession or attempt to possess child pornography was submitted to the issuing magistrate; (2) no evidence was submitted to

the magistrate regarding computer or electronics use by the suspect; and (3) the only evidence linking the suspect's attempted child molestation to possession of child pornography is the experience of the requesting police officer, with no further explanation.

*Id.* at 895. We also concluded, however, that "[t]he law in this circuit had not been clearly established regarding whether allegations of sexual misconduct or molestation at a place of work provide probable cause to search a residence for child pornography in the absence of an explanation tying together the two crimes." *Id.* at 900. We therefore held that, although the warrant lacked probable cause, the searching officers were entitled to qualified immunity. *Id.*

Like the officers in *Dougherty*, the OPD officers in this case relied on a warrant predicated on the bare inference that those who molest children are likely to possess child pornography. Since the date we decided *Dougherty*, it is clear in this circuit that such an inference, alone, does not establish probable cause to search a suspected child molester's home for child pornography. But because the standard for granting qualified immunity is the same as the standard of objective reasonableness under *Leon*, we cannot consistently grant qualified immunity to officers in *Dougherty*, who relied on the warrant in that case, and find that reliance on a similar type of warrant in this case (which was decided before *Dougherty*) was objectively unreasonable.

We thus conclude that the search in this case was executed in objectively reasonable reliance on the search warrant.[1]

Needham also argues that after *United States v. Weber*, 923 F.2d 1338 (9th Cir. 1990), no officer could have reasonably believed that the warrant to search Needham's apartment was supported by probable cause.[2]  We already addressed this issue in *Dougherty*.  There, we examined the facts of *Weber*, and concluded that "[i]f probable cause did not exist in *Weber*, it cannot exist here."  *Dougherty*, 654 F.3d at 898.  Nevertheless, we concluded that at that point in time, the law was not settled concerning "the question of whether evidence of child molestation, alone, creates probable cause for a search warrant for child pornography."[3]  *See id.* at 899.  Because we found sufficient

---

[1] We therefore need not discuss to what extent, if any, Needham's previous criminal charges and registration as a sex offender would support probable cause under the warrant.

[2] *Weber* involved an affidavit stating that the officer "could expect certain things to be at [the] houses" of child molesters and other deviants who commit sex crimes.  923 F.2d at 1345.  However, unlike the affidavit in this case, "there was not a whit of evidence in the affidavit indicating that Weber was a 'child molester.'"  *Id*.  Instead, Weber was suspected of having received an advertisement for child pornography two years prior to the search.  *Id.* at 1340.

[3] At the time of the search of Needham's home in July 2010, two circuits had held that evidence of child molestation does not by itself amount to probable cause that the suspect possesses child pornography.  *See United States v. Falso*, 544 F.3d 110, 122 (2d Cir. 2008) ("Although offenses relating to child pornography and sexual abuse of minors both involve the exploitation of children, that does not compel, or even suggest, [a] correlation . . . .");  *United States v. Hodson*, 543 F.3d 286, 293 (6th Cir. 2008) ("[I]t was unreasonable for the officer executing the warrant in this case to believe that probable cause existed to search Hodson's computers

ambiguity in our precedent, despite *Weber*, to confer a grant of qualified immunity in *Dougherty* in 2011, we are foreclosed from holding that *Weber* rendered good faith reliance on the warrant in this case impossible in 2010.

Needham's remaining arguments are unavailing. The warrant was not an impermissible "general warrant" as Needham claims;[4] rather, the warrant specified what the officers sought (child pornography or evidence of its receipt and/or distribution), and where it was believed they would find it (in Needham's paper documents or electronic media). Similarly, Needham claims that Detective Franco's affidavit did not contain a required, explicit statement that she believed Needham possessed child pornography. But the Supreme Court has declared that "the courts should not invalidate [a] warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner." *United States v.*

---

for child pornography based solely on a suspicion . . . that Hodson had engaged in child molestation."). The Eighth Circuit, however, had concluded to the contrary. *See United States v. Colbert*, 605 F.3d 573, 578 (8th Cir. 2010) ("[T]o the extent that *Hodson* and *Falso* suggest that evidence of a defendant's tendency to sexually abuse or exploit children is irrelevant to the probable cause analysis, we respectfully disagree.").

Since the OPD's search of Needham's residence, two more circuits have rejected the inference in question. *See Virgin Islands v. John*, 654 F.3d 412, 419 (3d Cir. 2011) ("[T]hose allegations [of sex crimes against minors] are not sufficient to establish—or even to hint at—probable cause as to the wholly separate crime of possessing child pornography."); *United States v. Doyle*, 650 F.3d 460, 472 (4th Cir. 2011) ("[E]vidence of child molestation alone does not support probable cause to search for child pornography.").

[4] A general warrant is one that authorizes a "general, exploratory rummaging in a person's belongings." *See Coolidge v. New Hampshire*, 403 U.S. 443, 467 (1971).

*Ventresca*, 380 U.S. 102, 109 (1965). Detective Franco's affidavit claimed that Needham had an unnatural sexual interest in children, and that people with an unnatural interest in children often possess child pornography. While the conclusion of Detective Franco's syllogism was not explicitly stated, a commonsense reading of the affidavit, and the fact that the warrant sought child pornography, indicate that Detective Franco suspected that Needham possessed child pornography.

**AFFIRMED.**

BERZON, Circuit Judge, concurring:

I concur only because the outcome of this case is dictated by *Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011). Were we deciding this case on a blank slate, I would hold that the evidence on the iPod must be suppressed, because the search warrant was so lacking in probable cause as to render the officers' reliance upon it objectively unreasonable. *See United States v. Leon*, 468 U.S. 897, 923 (1984). The warrant was based upon the very type of "rambling boilerplate" that, under the law of this circuit, has been disentitled to the *Leon* exception to the exclusionary rule for over 20 years. *See United States v. Weber*, 923 F.2d 1338, 1345 (9th Cir. 1991).

## I.

Needham was suspected of molesting a child in a mall restroom. On that basis, a state judge issued a warrant authorizing police to search Needham's house for clothing matching the description of his outfit the day of the alleged

molestation; the credit card that Needham used to purchase a juice at the mall that day; and mail, bills, or other documentation establishing Needham's identity as the resident of the house. So far, so good.

But the warrant did not stop there. In an additional two-and-a-half pages, the warrant went on to authorize police to conduct a sweeping search for any and all computers, electronic devices, data storage devices, and papers at Needham's house, and then to search within those devices and papers for child pornography.

If the warrant's supporting affidavit had included any information linking Needham to child pornography, then perhaps such a sweeping search would have been supported by probable cause. But the affidavit included no such information. It referenced a decade-old criminal *charge* for "possession of obscene matter," but did not indicate whether Needham was ever convicted of that charge, what type of "obscene matter" was at issue, or how that charge, incurred when Needham was a teenager, made it not just possible but *probable* that Needham would have child pornography in his house over ten years later.

It was not Needham's criminal history, in any event, that the affidavit principally relied upon to justify the search for child pornography, but the following word cloud of vague associations between Needham and various other types of illicit actors:

> Based upon my training and experience, NEEDHAM'S previous criminal history, and my discussions with other law enforcement professionals, I believe that NEEDHAM has

an unnatural sexual interest in children. I have learned the following characteristics are found to exist and be true in cases involving persons who molest children, buy, produce, sell or trade child pornography and who are involved with child prostitutes. They receive sexual gratification and satisfaction from actual physical contact with minors, communications with minors and from fantasy involving the use of pictures, photographs or electronic media and writing on or about sexual activity with minors. These people collect sexually explicit material of children consisting of photographs, magazines, motion pictures, video tapes, DVD's, electronic media, books and slides which they use for their own sexual gratification and fantasy. Such persons rarely, if ever, dispose of their sexually explicit materials, especially when they have taken the photographs or made the video involved, as these materials are treated as prized possessions.

As an initial matter, it is hard to tell what exactly this paragraph is saying or what, if anything, most of the words that it contains have to do with the investigation of Needham. There is certainly nothing in the affidavit suggesting that Needham was suspected of "produc[ing] . . . child pornography" or "involved with child prostitutes," so those phrases are simply extraneous. And who exactly are the nefarious "[t]hese people" to whom the paragraph refers? The antecedent of that phrase is far from clear. Nor does the paragraph — or anything else in the affidavit — affirmatively state that the affiant has probable cause to believe that

Needham, in particular, has downloaded child pornography onto computers in his home.

Nevertheless, attempting to give this affidavit the "common-sense" reading that we must, *see Illinois v. Gates*, 462 U.S. 213, 238–39 (1983), we can assume that the investigating officer meant, in this paragraph, to be saying something like: "I have learned that [some? many? most?] people who molest children also collect child pornography. Needham is suspected of molesting a child. Therefore, Needham probably has child pornography in his house."

The problem, so far as the Fourth Amendment is concerned, is that the affidavit nowhere states the officer's basis for the asserted connection between child molestation and possession of child pornography. Nor does the affidavit explain why the asserted connection is so strong as to make it not just possible or likely but *probable* that Needham would possess child pornography at his house at the time of the search. The affidavit states only that the detective "[has] learned the following characteristics are found to exist and be true." But how did she learn this? From reviewing empirical studies?[1] From her own past investigations? From discussing past investigations with her colleagues? From watching "Law and Order: SVU"? Even the prosecutor conceded, at the suppression hearing, that it would have been "preferable" had the officer referenced in the affidavit specific investigations

---

[1] As another court has noted, the empirical literature on links between child molestation and child pornography is "mixed" and most of the studies concern whether child pornography leads to child molestation, not "whether child molestors are more likely to possess child pornography." *Virgin Islands v. John*, 654 F.3d 412, 423 n.2 (3d Cir. 2011) (Fuentes, J., dissenting).

that she had worked on in which suspects of child molestation were found to possess child pornography. Nor does the affidavit give any indication that the affiant officer has any special expertise or training in sex crimes, beyond her nine years of general work as a police officer and approximately seven months (at the time of the warrant) of investigating the broad category of "crimes against children."[2]

None of this is to assert with any certainty that the officer did not have some basis for her belief about the asserted connection. But she did not explain her basis within the four corners of the affidavit, which is all that the district court and we, as a reviewing court, are able to consider. It is not the task of courts to surmise some basis for detectives after the fact, or to throw up our hands and defer to police "common sense" whenever they assert some link between various distinct types of crimes.

I am mindful that police have difficult jobs. But requiring that police provide the basis for their probable cause determinations within the four corners of the affidavit does not impose hypertechnical requirements on police. The

---

[2] The affidavit was sworn in July 2010; the affiant states that she "was assigned to work as a Youth Services Bureau Detective and specialized in the investigation of crimes against children" in December 2009. *Cf. United States v. Meek*, 366 F.3d 705, 712–13 & n.9 (9th Cir. 2004) (expert opinion supported probable cause where affiant was "veteran sex crimes investigator," and probable cause could be found even after excising the "singularly unhelpful" "boilerplate" from the affidavit); *United States v. Seybold*, 726 F.2d 502, 504 (9th Cir. 1984) (probable cause supported where DEA agent specified in affidavit that he had "14 years' experience in drug enforcement" and had "participat[ed] in hundreds of searches"); *United States v. Patterson*, 492 F.2d 995, 997 (9th Cir. 1974) (probable cause supported by observations of "experienced border agent").

magistrate must, of course, make a common-sense assessment of *whatever basis is provided*. *See Gates*, 462 U.S. at 238. But the basis has to be provided. "Sufficient information must be presented to the magistrate to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusions of others." *Id.* at 239.

In conformity with these longstanding principles of Fourth Amendment law, and as we held in *Dougherty* when reviewing a similarly deficient warrant:

> [A] search warrant issued to search a suspect's home computer and electronic equipment lacks probable cause when (1) no evidence of possession or attempt to possess child pornography was submitted to the issuing magistrate; (2) no evidence was submitted to the magistrate regarding computer or electronics use by the suspect; and (3) the only evidence linking the suspect's attempted child molestation to possession of child pornography is the experience of the requesting police officer, *with no further explanation.*

654 F.3d at 895 (emphasis added).

## II.

Tellingly, the government does not even try to argue that the warrant established probable cause to believe that Needham possessed child pornography. Rather, the government rests its case almost entirely on the argument that, even if the warrant did not establish probable cause, the

officers who conducted the search relied upon it in objective good faith, so the evidence they found is admissible under *Leon*, 468 U.S. 897.[3]

Were we deciding this issue as a question of first impression, I would reject this argument. *Leon* carved out a limited exception to the exclusionary rule, holding that evidence seized pursuant to an illegal search may still be admissible if the searching officers acted in objectively reasonable reliance on a warrant issued by a neutral magistrate. *Id.* at 926. But even under *Leon*, exclusion of the evidence remains the proper remedy where, as here, an officer relies "on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Leon*, 468 U.S. at 923 (internal quotation marks omitted); *see also United States v. Grant*, 682 F.3d 827, 836 (9th Cir. 2012). It is unreasonable to rely on a search warrant issued on the basis of an affidavit that "fails to establish at least a colorable argument for probable cause." *Grant*, 682 F.3d at 836 (internal quotation marks omitted).

---

[3] Alternatively, the government argues that "the warrant properly allowed law enforcement to search for . . . child pornography" because if child pornography were found in Needham's possession, that fact "could be relevant to show [Needham's] identity, motive, and intent" in a child molestation prosecution. Maybe so, but that argument is beside the point, because the warrant did not establish probable cause to believe that Needham possessed child pornography to begin with. "Under the Fourth Amendment, . . . there must be probable cause to seize *the particular things* named in the warrant." *United States v. SDI Future Health, Inc.*, 568 F.3d 684, 702 (9th Cir. 2009) (internal quotation marks and alterations omitted) (emphases added).

One type of affidavit that does not suffice for *Leon* purposes is known as the bare-bones affidavit. *Cf. Leon*, 468 U.S. at 926 (noting that there, the warrant "was supported by much more than a 'bare bones' affidavit"). Under the longstanding law of this circuit, an affidavit is bare-bones for *Leon* purposes if it rests upon "foundationless expert testimony" and there are no extenuating circumstances, such as time pressures upon the investigation, that could explain the affidavit's deficiency. *Weber*, 923 F.2d at 1346. Leaving aside that *Weber* happens also to be a child pornography case, *Weber*'s holdings are broadly applicable, and would govern this case regardless of the subject matter: First, expert testimony cannot support a probable cause determination when it consists merely "of rambling boilerplate recitations designed to meet all law enforcement needs," as opposed to targeted expert analysis of the particular case at hand. *Id.* at 1345. Second, when a warrant issues upon the basis of such "rambling boilerplate," the *Leon* exception to the exclusionary rule does not apply. *Id.* at 1345, 1346.

Under *Weber*'s definition, the affidavit in this case was bare-bones: It contained "rambling boilerplate recitations" and "fat[ty]," "foundationless expert testimony," "but certainly no muscle." *Id.* at 1345, 1346. In a single paragraph, the affidavit makes a variety of sweeping observations about various categories and subcategories of people, most of which simply have nothing to do with the investigation of Needham. This paragraph is the very definition of boilerplate: "[r]eady-made or all-purpose language that will fit in a variety of documents." Black's Law Dictionary (9th ed. 2009). Jumping around from people who "molest[] children" to people "involved with child prostitutes" to people who "take[] . . . photographs or ma[ke] . . . video[s]" of child pornography, the paragraph appears "ready-made" for insertion into just about

*any* investigation of *any* type of sex-related crime involving children. "It is clear that [this] portion of the affidavit was not drafted with the facts of this case or this particular defendant in mind." *Weber*, 923 F.2d at 1345. And to the extent that the affidavit does attempt to draw a connection between child molestation and possession of child pornography, that connection is "foundationless." The affidavit references what the officer has "learned," but does not specify how or where she learned it.

In similar cases, several of our sister circuits have declined to apply the *Leon* exception. *See John*, 654 F.3d at 418–19; *United States v. Doyle*, 650 F.3d 460, 475–76 (4th Cir. 2011); *United States v. Hodson*, 543 F.3d 286, 292–93 (6th Cir. 2008); *but see United States v. Falso*, 544 F.3d 110, 125–30 (2d Cir. 2008). An especially useful comparison is *Doyle*, in which the Fourth Circuit held that the *Leon* exception did not apply, and exclusion was the appropriate remedy, where "the application for a warrant to search a private residence for evidence of child pornography failed to indicate that the pictures allegedly possessed by the resident were in fact pornographic and provided no indication as to when the pictures were allegedly possessed." 650 F.3d at 463. In that case, the warrant application included detailed allegations that Doyle had sexually assaulted three children, but only a single "mention" of facts conceivably related to pornography: "the statement that one of the alleged victims 'disclosed to an Uncle that Doyle had shown the victim pictures of nude children.'" *Id.* at 472. Even though the statement was credible, it did not include any facts tending to show "that the pictures referenced . . . actually constituted child pornography," as opposed to mere nudity, or "when the pictures were possessed." *Id.* at 473, 474. Given this absence of temporal and other necessary information in the warrant

application, the officers' reliance on the warrant was objectively unreasonable; "nothing [in the warrant] indicated when or if child pornography allegedly existed in Doyle's home." *Id.* at 475–76.

Another instructive comparison is *Hodson*, in which, as in this case, "it [was] beyond dispute that the warrant was defective for lack of probable cause," because the warrant's supporting affidavit "established probable cause for one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography)." 543 F.3d at 292. And in *Hodson*, the Sixth Circuit concluded that, under those circumstances, the *Leon* exception did not apply. *Id.* at 292–93. In *Hodson*, however, there was at least some evidence that the defendant had used a computer for an illicit purpose (specifically, to engage in a sexually explicit online chat with a person whom he believed to be a child). *See id.* at 287.[4] Nevertheless, the chat did not have anything to do with pornography, and so "it was unreasonable for the officer executing the warrant . . . to believe that probable cause existed to search Hodson's computers for child pornography based solely on a suspicion—*albeit a suspicion triggered by Hodson's computer use*—that Hodson had engaged in child molestation." *Id.* at 293 (emphasis added).

If it was unreasonable for officers to rely on the warrant in *Doyle*, where there was at least some evidence in the affidavit that the defendant had possessed nude pictures—albeit no evidence as to whether the pictures were

---

[4] In fact, Hodson was chatting with an undercover detective from the New Jersey Sheriff's Department, who was representing himself online as a 12-year-old boy. *Hodson*, 543 F.3d at 287.

pornographic, or when they were possessed—and in *Hodson*—where there was at least some evidence in the affidavit that the defendant had used a computer for sexual contact with a minor—then surely it was unreasonable for the officers to rely on the warrant in this case. Here, the affidavit did not include even the stray mention of nude pictures that was deemed insufficient in *Doyle*, or the evidence of computer use that was deemed insufficient in *Hodson*. The *only* connection in the affidavit between Needham's alleged child molestation and child pornography was the investigating officer's personal belief that "Needham has an unnatural sexual interest in children," followed by some disjointed rambling about the broadly overinclusive metacategory of "cases involving persons who molest children, buy, produce, sell, or trade child pornography and who are involved with child prostitutes."

As any reasonable officer should know, the Fourth Amendment requires more. The law of this circuit has long been "clear": "[A] warrant [cannot] be broader than the probable cause on which it [is] based." *Weber*, 923 F.2d at 1346.

## III.

Considering precedents under *Leon*, then, I would hold that the *Leon* exception does not apply in this case, and that the evidence on the iPod must be suppressed. But as the majority opinion correctly notes, we may not limit our inquiry to precedents applying *Leon*. As the Supreme Court recently reminded us, the *Leon* objective reasonableness standard is equivalent to the Section 1983 qualified immunity standard. *See Messerschmidt v. Millender*, 132 S. Ct. 1235, 1245 n.1 (2012). Therefore, the outcome of this case is

dictated by our recent qualified immunity holding in *Dougherty*, 654 F.3d 892.

In *Dougherty*, we evaluated a very similar warrant in the context of a Section 1983 lawsuit. As noted above, we held that

> a search warrant issued to search a suspect's home computer and electronic equipment lacks probable cause when (1) no evidence of possession or attempt to possess child pornography was submitted to the issuing magistrate; (2) no evidence was submitted to the magistrate regarding computer or electronics use by the suspect; and (3) the only evidence linking the suspect's attempted child molestation to possession of child pornography is the experience of the requesting police officer, with no further explanation.

*Id.* at 895.

Nevertheless, we also held in *Dougherty* that the officers who conducted the illegal search were entitled to qualified immunity, because "[t]he law in this circuit had not been clearly established regarding whether allegations of sexual misconduct or molestation . . . provide probable cause to search a residence for child pornography in the absence of an explanation tying together the two crimes." *Id.* at 900. To support this conclusion, *Dougherty* noted that the question was one of first impression in this circuit, other circuits had split on "similar questions," and the Supreme Court had not yet addressed it. *Id.*

I find it difficult to square the probable cause holding in *Dougherty* with its qualified immunity holding. *Dougherty* relied heavily on *Weber* for its probable cause analysis, concluding that "[i]f probable cause did not exist in *Weber*, it cannot exist here." 654 F.3d at 898. And yet, in its qualified immunity analysis, *Dougherty* did not apply or even discuss *Weber*'s further holding that it is objectively unreasonable to rely on a warrant as lacking in indicia of probable cause as was the *Weber* warrant. *See id.* at 899–900. Considering *Dougherty*'s implication that the affidavit at issue there was *more* deficient than the *Weber* affidavit, *id.* at 898, there is considerable tension between its probable cause and qualified immunity holdings.

But whatever internal tension it may contain, *Dougherty* is binding upon us as a three-judge panel. As explained in the majority's opinion, our grant of qualified immunity in *Dougherty* compels application of the *Leon* exception here. I therefore concur.

---

TALLMAN, Circuit Judge, concurring:

I join the panel's decision because it is compelled by existing precedent. There is no question that, at the time the search warrant was executed, the officer relied in good faith on the magistrate's reasonable determination of probable cause. But if the slate were clean, I would also agree with the issuing magistrate that under the totality of the circumstances, probable cause existed to search Needham's home for child pornography. Our precedent acknowledges the need to respect the real world experiences of police officers who investigate juvenile sex crimes, but then fails to apply that

principle in declaring categorically that there is no nexus between child molestation and collection of child pornography. The circumstances of this case illustrate why such categorical pronouncements are unwise.

The circumstances included: conclusive evidence that Needham had recently molested a five-year-old victim in a shopping mall bathroom; a criminal history for similar conduct, including a prior arrest for lewd and lascivious behavior and possession of obscene materials; Needham's obligation to register as a previously convicted sex offender; and, importantly, the sex crimes detective's experienced judgment that a link exists between those who engage in child molestation and possession of child pornography. Common sense supports "a fair probability" that, under the totality of the circumstances, officers would find child pornography. *See Illinois v. Gates*, 462 U.S. 213, 238 (1983).

Yet our panel, and future panels of our Court, are constrained by *Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011), a flawed decision whose categorical rule that there is no such linkage will likely stifle legitimate law enforcement efforts to halt the proliferation of child pornography. This is not to suggest that the nature of the suspected crime should affect the defendant's Fourth Amendment rights, but rather to underscore the *Dougherty* majority's unwarranted refusal to respect an officer's "common sense leap . . . that a potential child predator has moved along the continuum of looking and into the realm of touching." *Id.* at 901–02 (Brewster, D.J., concurring in the judgment). Blinding ourselves to this reality has serious consequences, as is surely the case for those unfortunate child victims pictured in the 30,000 images and 200 videos

possessed by Needham, whom police had already shown was a child molester.

In creating this categorical rule—and ignoring common sense bolstered by police experience with child sex predators—the *Dougherty* court misinterpreted *United States v. Weber*, 923 F.2d 1338 (9th Cir. 1990), a pre-Internet case that establishes only that when an officer seeks to connect group A (child molesters) to conduct B (possession of child pornography), the officer must show that the defendant belongs to group A.[1]  The Customs inspector in *Weber* failed to make the necessary showing.  The officers in *Dougherty* and here succeeded in articulating sufficient detail to establish probable cause that the defendants had molested children and, in the officers' experience, were likely to possess child pornography.

We stated in *United States v. Reese* that "[f]requently in affidavits supporting requests for warrants, officers state, *based on their experience*, that narcotics dealers possess weapons.  Such statements certainly are appropriate and may be considered by magistrates in deciding whether to issue a warrant."  775 F.2d 1066, 1074 n.5 (9th Cir. 1985) (emphasis added).  Certainly, we would not allow officers to link any two crimes imaginable.  But when a sex crimes officer states, from experience, that a grown man who enters a mall bathroom and intentionally touches a boy on the penis also

---

[1] *Dougherty* also failed to consider the impact of our en banc decision in *United States v. Gourde*, 440 F.3d 1065 (9th Cir. 2006) (en banc), in which we stated that "*Weber* cannot be read to support Gourde's position—that a search warrant for child pornography may issue only if the government provides concrete evidence, without relying on any inference, that a suspect *actually* receives or possesses images of child pornography—without running afoul of *Gates*."  *Id.* at 1074.

likely possesses child pornography, that statement exists within the realm of common sense and deserves some deference.

We should not so cavalierly reject the empirical experience of sex crimes investigators linking lewd and lascivious conduct involving young children with possession of pornographic images of the objects of a predator's sexual desires. And our decisions, like *Dougherty*, should not so easily dispatch these "common-sense conclusions" made "by those versed in the field of law enforcement." *Gates*, 462 U.S. at 231–32. "These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Id.* at 231 (quoting *Brinegar v. United States*, 338 U.S. 160, 176 (1949)). The assessment of probable cause by the magistrate here met the Fourth Amendment standard for establishing "a substantial basis for conclud[ing] that a search would uncover evidence of wrongdoing." *Id.* at 236 (alteration in original) (citation and internal quotation marks omitted).

As the Supreme Court cogently observed in *Gates*:

> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood

by those versed in the field of law
enforcement.

*Id.* at 232 (quoting *United States v. Cortez*, 449 U.S. 411, 418
(1981)).

We need to revisit this issue and consign hypertechnical
decisions like *Dougherty* to the dust bin of erroneous blanket
legal pronouncements devoid of reality.